Filed 10/29/15 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JEAN E. SPRENGEL, | B256761 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC535584) |
| v. | |
| GREGORY A. ZBYLUT, et al., | ORDER MODIFYING OPINION (NO CHANGE IN JUDGMENT) |
| Defendants and Appellants. | |

THE COURT:

IT IS ORDERED that the opinion filed herein on October 13, 2015, be modified as follows:

1. On page 18, after the period at the end of the last full sentence reading "Although the defendants may ultimately defeat Sprengel's claims by proving the absence of an attorney-client relationship, that does not alter the substance of her claims.", footnote 7 shall be added that states:

Defendants contend that, in this particular case, we may reject Sprengel's claim of an implied attorney-client relationship under the first prong of the section 425.16 test because: (1) the undisputed evidence shows they "were hired only to represent the LLC [Purposeful Press]," not Sprengel; and (2) under "settled," "black letter law," an attorney for an LLC owes no professional duties to the LLC's individual members. Even if we were to assume that defendants' evidence established they were properly retained to

represent the LLC only (a fact Sprengel disputes), defendants have cited no authority holding that an attorney for an LLC has no obligations to the LLC's individual members. Instead, defendants rely solely on cases holding that an attorney for a corporation generally does not represent the corporation's officers or shareholders in their individual capacities. (See *ante*, at p. 17 & fn. 6.) Our courts have applied a different rule in the context of partnerships, explaining that a five-part factual inquiry is used to "determine whether in a particular case the partnership attorney has established an attorney-client relationship with the individual partners." (*Johnson v. Superior Court* (1995) 38 Cal.App.4th 463, 479; see also *Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1732 [rejecting "bright line rule that a partnership attorney may never have a duty of loyalty to individual partners"]; see *Wortham & Van Liew v. Superior Court* (1987) 188 Cal.App.3d 927, 933 [attorney for partnership also represents partners in matters of partnership business].) Defendants have not identified any decision addressing whether the rules governing the representation of corporations, rather than those governing the representation of partnerships, apply in the context of an LLC (in this case, a two-member LLC). To the extent the partnership rules were found to apply, a factual inquiry would be necessary to determine what duties (if any) the defendants owed to the LLC's members, including Sprengel. Thus, based on the arguments and evidence presented in their briefs, defendants have not "conclusively" negated the possibility of an attorney-client relationship between themselves and Sprengel; it would therefore be improper to resolve that issue under the first prong of the anti-SLAPP statute test. (Cf. *Flatley v. Mauro* (2006) 39 Cal.4th 299, 311 [under first prong analysis, section 425.16 is inapplicable in "rare cases where the defendant's assertedly protected speech or petitioning activity is conclusively demonstrated to have been illegal as a matter of law"; in the absence of such a showing, "any claimed illegitimacy of

the defendant's conduct must be resolved [under the second prong of the section 425.16 test]"].)

2. On pages 18 and 19, the footnotes numbered 7 and 8 shall be renumbered as footnotes 8 and 9.

The foregoing does not affect a change in the judgment.

_____

ZELON J.,                                                                           SEGAL, J.

Appellants' petition for rehearing is denied.

_____

PERLUSS, P. J.,                          ZELON, J.,                          SEGAL, J.

3

Filed 10/13/15 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JEAN E. SPRENGEL, | B256761 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC535584) |
| v. | |
| GREGORY A. ZBYLUT, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge. Affirmed.

Matthew J. Norris for Defendant and Appellant Gregory A. Zbylut.

Nemecek & Cole, Michael McCarthy and Susan S. Baker, for Defendants and Appellants Vincent Cox and Leopold, Petrich & Smith

The Law Offices of Fred J. Knez and Fred J. Knez, for Plaintiff and Respondent.

_____

Jean Sprengel and Lanette Mohr created "Purposeful Press, LLC" to market and distribute a guidebook that Sprengel wrote about the side effects of chemotherapy. Several years later, Sprengel and Mohr had a dispute about the management of the company. Sprengel filed an action to dissolve Purposeful Press and a separate action alleging that Mohr had infringed her copyrights to the guidebook. Mohr, purportedly acting as the manager of Purposeful Press, retained Gregory Zbylut, Vincent Cox and Leopold, Petrich & Smith (LPS) to represent the company in the actions. After the suits were resolved, Sprengel filed a malpractice action alleging that Zbylut, Cox and LPS had violated the duty of loyalty they owed to her under the Rules of Professional Conduct by pursuing Mohr's interests in the underlying dissolution and copyright actions. Sprengel alleged she had an implied attorney-client relationship with each defendant based on her status as a 50 percent owner of Purposeful Press.

Defendants filed a special motion to strike pursuant to Code of Civil Procedure section 425.16. The trial court denied the motion, concluding that Sprengel's claims did not arise from defendants' protected litigation activities, but rather from their alleged breach of professional and ethical duties that attorneys owe to their clients. We affirm.

## FACTUAL BACKGROUND

### A. *Summary of Events Preceding Sprengel's Malpractice Action*

#### 1. *Formation of Purposeful Press*

In 2008, Jean Sprengel, a licensed anesthesiologist, wrote and published a guidebook for treating the side effects of chemotherapy. In March of 2008, Lanette Mohr and Sprengel agreed to form a business to market the guidebook. They retained Kenneth Stream to assist them in forming "Purposeful Press," a limited liability corporation that would develop and distribute Sprengel's work. Stream prepared an "Operation Agreement" stating that Sprengel and Mohr were each 50 percent owners of the company. Under the terms of the agreement, Sprengel was to provide an initial cash investment of $5,000 and Mohr was to provide "organizational and business planning

2

services with an agreed-upon value of $5,000." The agreement identified Mohr as "the sole manager of the company."

In the fall of 2010, Mohr informed Sprengel she would not continue to manage the company unless her salary was increased. In response, Sprengel told Mohr she was willing to take over the managerial duties and requested that Mohr turn over the corporate records. Mohr, acting through her attorney Roger Rosen, "refused to surrender the books and records of the [c]ompany and instead asserted for the first time that she was the sole manager of the company and that [Sprengel] had no right to participate in any of the decisions affecting the [c]ompany."

In March of 2011, Mohr, purportedly acting as manager of Purposeful Press, retained Gregory Zbylut to provide legal services related to the dispute with Sprengel. Zbylut and Mohr thereafter "arranged for" Vincent Cox and his firm, Leopold Petrich & Smith (collectively LPS), to enter into a retainer agreement with Purposeful Press. The agreement, which was signed by Cox and Mohr, stated that LPS had been retained to investigate and confirm the company's intellectual property rights in the guidebook.

### 2. *Sprengel's lawsuits against Mohr and Purposeful Press*

In September of 2011, Sprengel filed a complaint for involuntary dissolution against Mohr and Purposeful Press, which was described as "a nominal defendant" that had been named as "a necessary party to an action of dissolution." The complaint alleged that Purposeful Press could no longer carry out its duties "in conformity with the Articles of Organization or Operating Agreement" because the "management of the company [had become] deadlocked or subject to internal dissension."

One month later, Sprengel filed a separate action against Mohr alleging that she had infringed Sprengel's copyrights to the original guidebook and various derivative works. The complaint asserted that although Sprengel had initially granted Purposeful Press a revocable implied license to sell the original and derivative works, she had later revoked the license. The complaint further alleged that despite Sprengel's revocation, Mohr, acting through Purposeful Press, had continued to market and sell the works.

After the suits were filed, LPS and Mohr signed amendments to the original retainer agreement with Purposeful Press stating that the parties had agreed to expand the scope of legal services to: (1) address problems LPS had discovered in the copyright registrations that Kenneth Stream had prepared and filed on behalf of the company; (2) pursue a declaratory relief action to confirm Purposeful Press's "rights in its intellectual property"; and (3) pursue damage claims against Sprengel, who had allegedly transferred over $150,000 out of Purposeful Press's bank accounts without Mohr's authorization.

In December of 2012 and January of 2013, a federal district court presided over a five-day bench trial on Sprengel's copyright claims. After the trial was completed, the court issued its "Findings of Fact and Conclusions of Law," which declared Sprengel as the sole author and owner of the intellectual property rights of the chemotherapy guidebook and various derivative works. The court further found, however, that Sprengel had provided Mohr and Purposeful Press an implied license to publish and sell the works, thereby "absolv[ing]" them of any "liability for copyright infringement." The court's findings also noted that, prior to trial, it had ruled Purposeful Press "need not actively participate in [the] litigation" because the company "did not appear to have any interests independent of its two members" and "neither Sprengel nor Mohr could be trusted to retain independent counsel to provide Purposeful Press with neutral representation."

## B. Sprengel's Malpractice Action Against Zbylut and LPS

### 1. Summary of Sprengel's complaint

In September of 2013, Sprengel filed the current lawsuit against Zbylut and LPS. The complaint alleged that when Mohr retained defendants to represent Purposeful Press in the underlying dissolution and copyright actions, there was an understanding between them that defendants would "provide legal services for the benefit of Mohr, and to the prejudice of [Sprengel], under the pretext that the legal services were for the benefit of the [c]ompany." The complaint further alleged that defendants had "solicited payment from the [c]ompany for their legal services in conjunction with the [d]issolution [c]ase and the [c]opyright [c]ase without [Sprengel's] knowledge or consent. The legal services

4

provided by [d]efendants in the d]issolution [c]ase and the [c]opyright [c]ase were primarily devoted to the best interests of Mohr and assisting [Mohr's individual counsel Rose] in his representation of Mohr in those cases, at the [c]ompany's expense."

Sprengel alleged four causes of action: (1) professional negligence (malpractice); (2) breach of fiduciary duties; (3) constructive fraud; and (4) "common count for money had and received." In her malpractice claim, Sprengel asserted that "[b]y undertaking to provide legal services and soliciting payment from [Purposeful Press] in the [dissolution and copyright cases], [d]efendants became obligated to [Sprengel] to exercise reasonable care and skill with the standard of care for attorneys . . . and in accordance with California Rules of Professional Conduct Rules 3-110; 3-200; 3-300; 3-310; 4-100; 4-101; and 4-200." She further alleged defendants had breached the professional obligations they owed to her by "fail[ing] to provide reasonable care and skill in undertaking the legal services"; "fail[ing] to communicate with [Sprengel] and inform [her] of material facts and information relating to the legal services provided and charged to [Purposeful Press]"; and "fail[ing] to avoid conflicts of interest and violat[ing] Rules of Professional Responsibility governing representation involving conflicts of interest including the failure to obtain written waivers from [Sprengel] and Mohr."

Sprengel's second claim for breach of fiduciary duty similarly alleged that "by undertaking to provide legal services regarding the affairs of [Purposeful Press] including the disputes between the [c]ompany's two 50 percent owners and causing the [c]ompany to pay for those legal services, a fiduciary relationship existed between [Sprengel] and [d]efendants such that [d]efendants owed to [Sprengel] the duties of honesty, good faith, undivided loyalty and full disclosure of material facts . . . and were obligated to comply with all of the Rules of Professional Conduct . . . including Rules 3-200(a); 3-300; and 4-200." Defendants allegedly breached their fiduciary duties by, among other things, concealing material facts, engaging in and concealing a conflict of interest, charging Purposeful Press for legal services "calculated to benefit the interests of Mohr and prejudice [Sprengel]" and failing to obtain Sprengel's consent for payment of legal services.

5

Sprengel's third and fourth claims for constructive fraud and "common count for money had and received" were each based on defendants' breach of the professional obligations and fiduciary duties they allegedly owed to Sprengel. The constructive fraud claim asserted defendants' misconduct was "willful, malicious and done with a conscious disregard for plaintiff's rights and interests," thereby entitling Sprengel to "punitive damages." The count for "money had and received" asserted that Sprengel was entitled to recover any money the defendants had received from Purposeful Press "by reason of [d]efendants' violation of their ethical duties including Rules of Professional Responsibility."

### 2. *Defendants' special motion to strike under Code of Civil Procedure section 425.16*

Defendants filed specials motion to strike the complaint pursuant to Code of Civil Procedure section 425.16,[1] arguing that Sprengel's claims arose from constitutionally protected petitioning activity because the "alleged conduct which purportedly gives rise to [their] liability was comprised solely of [activities] in connection with civil litigation." According to defendants, such conduct was "unquestionably . . . covered by the anti-SLAPP statute as a matter of law."

Defendants also argued there were several reasons Sprengel could not establish a probability of prevailing on her claims. First, defendants asserted that "[a]ll of Sprengel's claims either directly [or implicitly] allege the existence of an attorney-client relationship between her and [defendants]" based on her status as a 50 percent owner of Purposeful Press. Defendants contended Sprengel could not establish the existence of such a relationship because: (1) the complaint expressly acknowledged that defendants only agreed to represent Purposeful Press: and (2) "California law is patently clear that an attorney for a corporate entity does not owe a duty of care to the company's members by virtue of representing the company."

---

[1] Zbylut and LPS filed separate motions to strike Sprengel's complaint that raised identical arguments. The analysis set forth in this decision applies to both motions.

Second, defendants argued that the litigation privilege set forth in Civil Code section 47 "operate[d] as a complete defense" because the conduct Sprengel had challenged in her complaint consisted entirely of legal communications related to anticipated or pending lawsuits involving Purposeful Press. Defendants explained that "[s]ince the very basis of Sprengel's [c]omplaint . . . is the attorney's conduct in representing the [c]ompany, the litigation privilege bars the [c]omplaint in its entirety." Third, defendants argued that "to the extent Sprengel . . . [was] assert[ing] breaches of duties [the defendants] owed to [Purposeful Press]," she was required to bring such claims through a derivative action on behalf of the company rather than through an individual action.

In her opposition, Sprengel argued that her claims did not arise from the defendants' protected litigation activities, explaining that "multiple published opinions have held the anti-SLAPP statute . . . does not apply to claims of attorney malpractice or breach of fiduciary duties or engaging in conflicts of interest." Sprengel also argued that defendants' "arguments regarding the existence or non existence of an attorney client relationship" were not relevant to determining whether her claims arose from protected activity.

Sprengel further contended that even if her claims were subject to section 425.16,[2] she had established a probability of prevailing on the merits because there were "issues of fact regarding whether an attorney client relationship existed between [her] and [d]efendants." Although Sprengel admitted she did not enter into an express attorney-client agreement with any of the defendants, she argued that several factors "support[ed] a finding that there was an [implied] attorney client-relationship between [them]," including: (1) the limited "size of [Purposeful Press][, which] suggest[ed] an individual representation of the [company's] members" ; (2) the defendants' legal services were paid with funds that belonged to Sprengel; (3) the subject matter of the representation

---

[2]    Unless otherwise noted, all further statutory citations are to the Code of Civil Procedure.

7

involved Sprengel's copyrights and her intellectually property rights; and (4) the district court's order in the copyright action had specifically found that Purposeful Press had no interests independent of its two members. Sprengel also argued that the litigation privilege did not provide a defense to her claims because the privilege was inapplicable where "a client has asserted claims against an attorney for breaches of duties . . . and conflict of interest."

In their reply briefs, defendants argued that the cases Sprengel had cited in support of her assertion that section 425.16 does not apply to claims predicated on an attorney's breach of professional obligations were "wholly distinguishable" because "unlike the present case, the attorney defendants in [those decisions] actually represented and, were counsel of record for, the plaintiff clients at one time or another." According to defendants, "the recurring theme in each [case] cited by Sprengel is that claims by clients (current or former) against their attorneys are not protected by the anti-SLAPP statute because these claims arise from the attorneys' alleged breach of professional and ethical duties owed to clients, not from the attorneys protected litigation activity. . . . [Defendants, however,] never represented Sprengel." Defendants explained that while Sprengel had "allege[d] the existence of an attorney-client relationship between her and [defendants]" based on her status as a 50 percent owner of Purposeful Press, California case law made clear that an attorney for a corporate entity owes no duty to the corporation's shareholders. Accordingly, there were "no grounds" to support a finding of an individual attorney-client relationship.

The trial court denied defendants' motions to strike, concluding that Sprengel's claims did not arise from constitutionally protected activity within the meaning of section 425.16. The court explained the statute was inapplicable because "the gravamen" of Sprengel's claims was that "by representing Purposeful Press LLC and Mohr's interests against [Sprengel] and being paid out of LLC funds . . ., [defendants] breached a . . . fiduciary duty owed directly to [Sprengel] as a 50 percent member of the LLC" and "undertook to represent a party with interests adverse to [Sprengel] in violation of an alleged duty of loyalty." The court further explained that "whether or not [d]efendant

8

attorneys actually owed such duties toward [Sprengel] is an inquiry addressed to the second prong of the anti-SLAPP analysis, but not the first prong." The court emphasized that although "defendants will have an opportunity to establish any defense to [Sprengel's] claim, . . . a [section] 425.16 special motion to strike is not the proper procedural device for representing such defenses."

## DISCUSSION

### A. *Summary of Applicable Law and Standard of Review*

"Section 425.16, 'commonly referred to as the anti-SLAPP statute'[3] [citation] is intended 'to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.] The section authorizes the filing of a special motion that requires a court to strike claims brought 'against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)

"Section 425.16 '"requires that a court engage in a two-step process when determining whether a defendant's anti-SLAPP motion should be granted."' [Citation.] '"First the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. [Citation.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]." [Citation.]. . . [¶] If the defendant makes this showing, the court proceeds to the second step of the anti-SLAPP analysis. [Citation.] In the second step, the court decides whether the plaintiff has demonstrated a reasonable probability of prevailing at trial on the merits of its challenged causes of action. [¶] Conversely, if the defendant does not

---

**3**      The acronym "SLAPP" stands for "strategic lawsuit against public participation." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 312.)

9

meet its burden on the first step, the court should deny the motion and need not address the second step.' [Citation.]

"'An appellate court reviews an order granting an anti-SLAPP motion under a de novo standard. [Citation.] In other words, we employ the same two-pronged procedure as the trial court in determining whether the anti-SLAPP motion was properly granted.' [Citation.]" (*Hunter v. CBS Broadcasting, Inc*. (2013) 221 Cal.App.4th 1510, 1519 (*Hunter*).)

## B. Defendants Failed to Establish that Sprengel's Claims Arise from Protected Activity

"The sole inquiry under the first prong of the anti-SLAPP statute is whether the plaintiff's claims arise from protected speech or petitioning activity. [Citation.] Our focus is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims." (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491 (*Castleman*).) "A cause of action does not 'arise from' protected activity simply because it is filed after protected activity took place. [Citation.] Nor does the fact '[t]hat a cause of action arguably may have been triggered by protected activity' necessarily entail that it arises from such activity. [Citation.] The trial court must instead focus on the substance of the plaintiff's lawsuit in analyzing the first prong of a special motion to strike." (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669 (*Peregrine*); see also *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727 (*Freeman*) ["'when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute'"].) "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' [Citation.]" (*Castleman, supra,* 216 Cal.App.4th at p. 490.)

Sprengel's claims allege that defendants are liable for breaching professional obligations an attorney owes to his or her clients, including the duty of loyalty set forth in rule 3-310 of the California Rules of Professional Conduct[4] and various fiduciary duties. Sprengel asserts defendants violated these obligations by pursuing the interests of Purposeful Press and Mohr in the underlying dissolution and copyright actions, which were directly adverse to her own interests in those matters, and then using Sprengel's assets to pay themselves for their legal services without her consent. Although Sprengel admits she did not enter into an express attorney-client agreement with any of the defendants, she alleges that defendants' representation of Purposeful Press gave rise to an implied agreement that they would also represent her individually because she owned 50 percent of the company. Thus, Sprengel effectively asserts she shared an individual attorney-client relationship with defendants based on her status as a 50 percent shareholder of Purposeful Press.

Defendants argue that Sprengel's claims necessarily arise from protected petitioning activity because she seeks to impose liability based on the legal services they provided to Purposeful Press. Although defendants are correct that an attorney's "litigation-related activities" (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 (*Kolar*), including the "filing . . . and prosecution of a civil action" on behalf of a client (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056), constitute acts in furtherance of a person's right of petition, numerous cases have held that "actions based on an attorney's breach of professional and ethical duties owed to a client" are generally not subject to section 425.16 "even though protected litigation activity features prominently in the factual background." (*Castleman, supra,* 216 Cal.App.4th at p. 490.)

---

**4**      Rule 3-310 states, in part, that an attorney "shall not, without the informed written consent of each client:  (1)  Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict . . ."  (Cal. Rules of Prof. Conduct, Rule 3-310, subd. (C).)

For example, in *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179 (*Benasra*), a decision issued by this District, the plaintiffs alleged their former attorneys had violated the duty of loyalty set forth in rule 3-310 by accepting representation of a rival company whose interests were adverse to the plaintiffs. Defendants brought a motion to strike the complaint, arguing that their representation of the plaintiffs' rival was a protected activity within the meaning of Section 425.16. The court disagreed, ruling that the plaintiffs' claims were not "based on" the legal services defendants had provided to the rival company, "but rather [were based on their] fail[ure] to maintain loyalty to . . . a client.'" (*Id*. p. 1189.) The court explained that the "breach [of loyalty] occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client. . . . In other words, once the attorney accepts a representation in which confidences disclosed by a former client may benefit the new client due to the relationship between the new matter and the old, he or she has breached a duty of loyalty. The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it." (*Ibid*.)

Similarly, in *Freeman, supra,* 154 Cal.App.4th 719, the Fourth District ruled that section 425.16 did not apply to plaintiffs' claims alleging that their attorney had breached professional obligations set forth in rule 3-310 when he "abandoned them in order to represent adverse interests in the same and different litigation." (*Id*. at p. 722.) Relying on the reasoning in *Benasra, supra,* 123 Cal.App.4th 1179, the court held that while the defendant's litigation activities were a "major focus" (*id*. at p. 729) of plaintiffs' claims, the "principal thrust of the conduct underlying the causes of action . . . [was defendant's] undertaking to represent a party with interests adverse to plaintiffs, in violation of the duty of loyalty he assertedly owed them." (*Id*. at p. 732.) The court explained that "plaintiffs' allegations concerning [the defendant's protected petitioning activities were] incidental to the allegations of . . . negligence in failing to properly represent their interests[] and breach of fiduciary duty arising from his representation of clients with adverse interests." (*Id*. at p. 732.)

In *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204 (*PrediWave*), the plaintiff, a corporate entity, was sued by an investor who alleged that a PrediWave board member had induced the investor to purchase PrediWave through a series of false representations.  PrediWave retained Simpson Thacher to defend the company and the board member in the investor suit.  After the investor prevailed at trial, PrediWave sued Simpson Thacher, alleging that the firm had engaged in a defense strategy that protected the individual board member while compromising PrediWave's interests.  Simpson Thacher filed a section 425.16 motion asserting that PrediWave's claims arose from protected litigation activities that occurred during the course of representing the plaintiff and its agent.

The Sixth District rejected the argument, reasoning that "the principal thrust of PrediWave's causes of action is that defendants simultaneously represented both PrediWave and [the board member] in matters in which they had an irreconcilable conflict of interest.  This conflict of interest allegedly adversely affected defendants' choice of legal strategy and . . . resulted in defendants' repeated failures to take action to safeguard PrediWave against [the board member's] misconduct." (*PrediWave, supra,* 179 Cal.App.4th at pp. 1226-1227.)  Citing *Benasra* and *Freeman*, the court held that defendants' allegedly improper "continuation of joint representation" (*id*. at p. 1227) did not qualify as a form of protected activity.

More recently, in *Castleman, supra*, 216 Cal.App.4th 481, the Fifth District held that section 425.16 did not apply to claims alleging that an attorney had committed various "ethical violations, including breaches of the duties of loyalty and confidentiality owed to [plaintiffs] as former clients under the State Bar Rules of Professional Conduct." (*Id*. at p. 488.)  The defendant, Peter Sagaser, had previously worked at a law firm that represented plaintiff Peter Castleman in acquiring real estate from James Bratton.  Several years after the real estate transaction was completed, Sagaser "resigned from the [firm] under . . . acrimonious terms stemming from an internal dispute between Sagaser and his law partners." (*Id*. at p. 485.)  Before his resignation became effective, Sagaser remotely accessed the firm's document management system and reviewed files related to

Castleman's transaction with Bratton. Shortly thereafter, Sagaser met with a third-party law firm and Bratton. The third-party law firm then filed a complaint on behalf of Bratton alleging that Castleman and Sagaser's former firm had conspired to defraud Bratton out of the properties at issue in the prior real estate transaction. Castleman and his related entities filed a separate suit against Sagaser alleging he had breached his professional obligations by using confidential information his former firm had obtained in connection with its representation of Castleman and advising Bratton in the suit against Castleman. Sagaser brought a section 425.16 claim asserting that Castleman's claims were predicated on protected petitioning activity, including communications with Bratton's counsel and participating in Bratton's lawsuit.

After reviewing *Benasra*, *Freeman* and similar cases, the court concluded Castleman's claims were not subject to section 425.16. According to the court, "[t]he foundation of each claim [wa]s the allegation that Sagaser chose to align himself with [plaintiffs'] adversaries, in direct opposition to [plaintiffs'] interests, thereby breaching duties of loyalty and confidentiality owed to them by virtue of a prior attorney/client relationship. [Plaintiffs'] complaint specifically alleges that Sagaser violated the State Bar Rules of Professional Conduct, including rule 3-310, which is the principal thrust of their lawsuit." (*Castleman, supra,* 216 Cal.App.4th at p. 493.)

Finally, in *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496 (*Loanvest*), decided earlier this year, the First District concluded section 425.16 was inapplicable to claims that are highly analogous to those at issue here. The plaintiff, a corporate entity, sued its former attorney for malpractice, alleging he had breached his duty of loyalty by taking legal positions in a prior litigation that were intended to benefit the company's previous manager, who controlled the company. More specifically, the complaint alleged the attorney "'never represented [the company's] interests, instead egregiously breaching the duty of loyalty owed to his purported client' [by] aid[ing] his 'true client,' [the company's manager], in 'looting' [the company] to pay [the manager's] obligations." (*Id*. at p. 500.)

14

The appellate court ruled the claim was not subject to section 425.16, explaining that "numerous [prior] decisions" had found the statute did not apply "[w]here . . . a legal malpractice action is brought by an attorney's former client, claiming that the attorney breached fiduciary obligations to the client as the result of a conflict of interest or other deficiency in the representation of the client." (*Loanvest, supra*, 235 Cal.App.4th at p. 504.) Quoting *Prediwave*, the court agreed with these prior decisions' conclusion that it would be "'unreasonable to interpret [section 425.16, subdivision (b)] . . . to include a client's causes of action against the client's own attorney arising from litigation-related activities undertaken for that client.' [Citation.]" (*Id.* at p. 503.)

Several other cases have followed the reasoning set forth in *Benasra, Freeman, PrediWave, Castleman* and *Loanvest*, concluding that section 425.16 is generally inapplicable to claims seeking to impose liability based on an attorney's violation of the conflict of interest rules set forth in the Rules of Professional Conduct or other attorney actions taken on behalf of a client. (See *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617, 1628 [section 425.16 inapplicable to claim seeking "relief based on . . . a successive representation conflict of interest in violation of rule 3-310"]; *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1274-1275 [section 425.16 inapplicable to claim alleging that attorney breached his fiduciary duty by inducing client to pursue unnecessary causes of action to extract unconscionable fees]; *cf. Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381 (*Coretronic*) [section 425.16 inapplicable to claims alleging that defendant breached professional obligations owed to a non-client by "conceal[ing] . . . representation of [the plaintiff's adversary] while obtaining sensitive information of benefit to [the adversary] in its lawsuit against plaintiffs"]; *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702 ["'California courts have held that when a claim [by a client against a lawyer] is based on a breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech, though those activities arose from the filing, prosecution of and statements made in the course of the client's lawsuit. The reason is that the lawsuit concerns a breach of duty that does not depend on the exercise

15

of a constitutional right'"].) Our courts have similarly concluded that malpractice claims that challenge the competency of an attorney's legal services are not subject to section 425.16 because, in such cases, "the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so." (*Kolar, supra,* 145 Cal.App.4th at p. 1540; see also *Jespersen v. Zubiate–Beauchamp* (2003) 114 Cal.App.4th 624, 630 [section 425.16 inapplicable to a "garden-variety attorney malpractice claim" predicated on defendants' failure to serve timely discovery objections and comply with various discovery orders].)

Sprengel's claims against defendants cannot be meaningfully distinguished from the claims at issue in *Benasra*, *Freeman*, *PrediWave, Castleman* and *Loanvest*. The "principal thrust" of Sprengel's claims is that defendants violated the duty of loyalty they owed to her as a client by aligning themselves with Purposeful Press and Mohr in the underlying dissolution and copyright actions, in direct opposition to Sprengel's interests in those matters. Sprengel also alleges defendants breached fiduciary duties "owed to [her] by virtue of a[n] . . . attorney/client relationship" (*Castleman, supra,* 216 Cal.App.4th at p. 493) by accepting Sprengel's funds to pay for their legal services without her consent. Thus, "'the activit[ies] that give[] rise to [defendants'] asserted liability'" (*Freeman, supra*, 154 Cal.App.4th at p. 732) are undertaking a representation in which they had an irreconcilable conflict of interest; failing to competently represent Sprengel's interests in the underlying litigation; and failing to obtain Sprengel's permission before using her funds to pay for the litigation. Although Sprengel's claims may have been "'"triggered by" or associated with'" (*id.* at p. 730) defendants' litigation activities, they do not arise out of those acts. (*Ibid.*; see also *Coretronic, supra*, 192 Cal.App.4th at p. 1392 ["Any assertedly protected activity is not the root of the complaint; it is merely the setting in which the claims arose"].) Instead, they arise out of defendants' breach of professional obligations they allegedly owed to Sprengel as the result of an implied attorney-client relationship arising out of defendants' representation of Purposeful Press.

Defendants do not dispute that the "gravamen" of Sprengel's claims is that they breached various professional duties arising from an implied attorney-client relationship.[5] They argue, however, that *Benasra* and subsequent cases that have adopted its reasoning are distinguishable because, "despite the allegations of Sprengel's complaint," there is "absolutely no evidence that [defendants] were retained to represent her individually." Rather, according to defendants, Sprengel's complaint makes clear that they only agreed to represent Purposeful Press. Defendants contend that, under well-established case law, an attorney's representation of a corporate entity does not give rise to an implied attorney-client relationship with the individual shareholders of the entity. (See generally *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 731 (*Koo*) ["'[t]he attorney for a corporation represents it, its stockholders and its officers in their representative capacity. He in nowise represents the officers [or shareholders] personally'"]; *La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court* (2004) 121 Cal.App.4th 773, 784 (*La Jolla Cove Motel*) ["[i]n representing a corporation, an attorney's client is the corporate entity, not individual shareholders or directors, and the individual shareholders or directors cannot presume that corporate counsel is protecting their interests"]; *Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 704 (*Skarbrevik*) ["[C]orporate counsel's direct duty is to the client corporation, not to the shareholders individually"].)[6] Defendants assert that "because there is . . . no evidence that an attorney-client relationship was ever created between Sprengel and [defendants]. . ., her claims do not arise from an attorney-client relationship and do not sound in non-petitioning legal malpractice claims."

---

[5]     In their trial court motions, both Zbylut and LPS acknowledged that Sprengel's claims were "based on the existence of an attorney-client relationship between her and [the defendants]."

[6]     For the purposes of this decision, we need not decide whether the general rule described in *Koo*, *La Jolla Cove Motel* and *Skarbrevik*, which involves the relationship between an attorney and a corporation, applies equally to the relationship between an attorney and a limited liability corporation such as Purposeful Press, which is comprised of only two members who each own 50 percent of the enterprise.

17

Defendants' arguments regarding the absence of an attorney-client relationship with Sprengel improperly conflate the first and second prongs of the Section 425.16 test. "The sole inquiry" under the first prong of the test is whether the plaintiff's claims arise from protected speech or petitioning activity. (*Castleman, supra,* 216 Cal.App.4th at p. 490.) In making this determination, "[w]e do not consider the veracity of [the plaintiff's] allegations" (*id.* at p. 493) nor do we consider "[m]erits based arguments." (*Freeman, supra*, 154 Cal.App.4th at p. 733 ["[m]erits based arguments have no place in our threshold analysis of whether plaintiffs' causes of action arise from protected activity"]; see also *Coretronic, supra*, 192 Cal.App.4th at p. 1388 "[a]rguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis"].) If the defendant demonstrates the plaintiff's claims do arise from protected activity, we then review the potential merits of the plaintiff's claims in the second step of the analysis. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 ["If the court finds [the defendant has satisfied the first prong], it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim"].) However, "[w]here [defendant] cannot meet his threshold showing, the fact he might be able to otherwise prevail on the merits under the 'probability' step is irrelevant." (*Freeman, supra*, 154 Cal.App.4th at p. 733.) Whether Sprengel actually shared an attorney-client relationship with defendants relates to the merits of her claims and is therefore not relevant to our first prong analysis. Although the defendants may ultimately defeat Sprengel's claims by proving the absence of an attorney-client relationship, that does not alter the substance of her claims. (See *Peregrine, supra*, 133 Cal.App.4th at p. 669-670 [the "court must . . . focus on the substance of the plaintiff's lawsuit in analyzing the first prong of a special motion to strike"].)[7]

_____

[7]    At oral argument, defendant Gregory Zbylut argued he never represented Sprengel and that the legal services he provided to Purposeful Press involved tax matters having no relation to the company's ongoing litigation with Sprengel. Generally, claims predicated on "transactional malpractice"—which involve legal advice unrelated to litigation—are not subject to section 425.16. (See *Peregrine, supra*, 133 Cal.App.4th at p. 670; *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 195-197.) Thus, even if we were to assume the

18

Because we agree with the trial court's finding that defendants failed to establish plaintiff's claims arise from protected petitioning activity, we need not address the second step of the anti-SLAPP analysis. (See *Hunter, supra,* 221 Cal.App.4th at p. 1519 ["'if the defendant does not meet its burden on the first step, the court should deny the motion and need not address the second step'"].)[8]

## DISPOSITION

The trial court's order denying appellants' special motions to strike is affirmed. Respondent shall recover her costs on appeal.

ZELON, J.

I concur:

SEGAL, J.

---

truth of Zbylut's assertions, rather than those pleaded in the complaint, section 425.16 would not appear to apply to Sprengel's claims against him.

[8]     The dissent does not disagree with our application of existing case law nor does it dispute that, for the purposes of our prong one analysis, we must "proceed on the premise, as alleged by Sprengel," that she did in fact share an attorney-client relationship with defendants. (Dis. opn. *post*, at pp. 2-3.) The dissent contends, however, that the numerous cases finding section 425.16 inapplicable to claims predicated on an attorney's acceptance of a conflicting representation or on activities undertaken for the client who is asserting the claim were wrongly decided. We are not aware of any case that has directly rejected the holdings in *Benasra*, *Freeman*, *PrediWave*, *Castleman* and *Loanvest*. This line of cases extends back more than a decade and includes published decisions from five of our six districts. As the dissent acknowledges, the "Legislature has previously demonstrated its willingness to . . . correct" perceived misapplications of section 425.16. (See Dis. opn. *post*, at p. 6.) Although the Legislature has amended section 425.16 and other SLAPP provisions several times over the past ten years, it has never signaled any disagreement with *Benasra* or its progeny. (See *In re W.B., Jr.* (2012) 55 Cal.4th 30, 57 ["The Legislature is presumed to know about existing case law when it enacts or amends a statute"].)

19

PERLUSS, P. J., Dissenting.

The first step in the well-established two-step process in ruling on a special motion to strike under Code of Civil Procedure section 425.16[1] is to decide "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution in connection with a public issue' as defined in the statute." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; accord, *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 ["[i]n the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech"].)

A lawyer's prelitigation and litigation-related activities on behalf of a client constitute protected speech or petitioning activity within the meaning of section 425.16. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115; see *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388.) Yet, as the majority opinion accurately states, numerous appellate decisions have held actions based on an attorney's breach of professional and ethical duties owed to a client fail to satisfy the first prong of the section 426.16 analysis and are not subject to a special motion to strike "even though protected litigation activity features prominently in the factual background" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491)—in fact, even though, as here, the lawyer defendants' conduct that gives rise to their asserted liability (the alleged breaches of fiduciary duty and violations of ethical standards) consisted almost entirely of protected litigation-related activities. (See, e.g., *Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, 505 [legal malpractice action alleging breach of fiduciary duty based on attorney's conflict of interest in representing client in litigation not subject to

---

[1] Statutory references are to this code.

1

special motion to strike under § 425.16]; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 729, 732 [claim that attorney abandoned client in order to represent party with adverse interest in same and different litigation not subject to § 426.16 motion]; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1539-1540 [malpractice claim alleging attorney's incompetent handling of lawsuit not subject to § 425.16 motion].)  Why?

A comprehensive explanation for this development was set forth by our colleagues in the Sixth District in *PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1227 (*PrediWave*):  "In determining the applicability of the anti-SLAPP statute, we think a distinction must be drawn between (1) clients' causes of action against attorneys based upon the attorneys' acts on behalf of those clients, (2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) nonclients' causes of action against attorneys.  In the first class, the alleged speech and petitioning activity was carried out by attorneys on behalf of the plaintiffs in the lawsuits now being attacked as SLAPP's, although the attorneys may have allegedly acted incompetently or in violation of the Professional Rules of Conduct.  The causes of action in this first class categorically are not being brought 'primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition . . . .' (§ 425.16, subd. (a).)"  Accordingly, the *PrediWave* court held, "it is unreasonable to interpret this language to include a client's causes of action against the client's own attorney arising from litigation-related activities undertaken for that client." (*Id.* at p. 1228.)  Similarly, in *Loanvest I, LLC v. Utrecht, supra*, 235 Cal.App.4th at page 504, the court held, "Where . . . a legal malpractice action is brought by an attorney's former client, claiming that the attorney breached fiduciary obligations to the client as the result of a conflict of interest or other deficiency in the representation of the client, the action does not threaten to chill the exercise of protected rights and the first prong of the anti-SLAPP analysis is not satisfied." (See also *Kolar v. Donahue, McIntosh & Hammerton, supra,* 145 Cal.App.4th at p. 540 ["[a] malpractice claim focusing on an attorney's

2

incompetent handling of a previous lawsuit does not have the chilling effect on advocacy found in malicious prosecution, libel, and other claims typically covered by the anti-SLAPP statute"]; *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 702 ["'California courts have held that when a claim [by a client against a lawyer] is based on a breach of the fiduciary duty of loyalty or negligence, it does not concern a right of petition or free speech, though those activities arose from the filing, prosecution of and statements made in the course of the client's lawsuit"].)

I agree with the majority that Jean Sprengel's claims against attorneys Gregory Zbylut, Vincent Cox and the Leopold, Petrich & Smith law firm (collectively lawyer defendants) cannot be meaningfully distinguished from the claims at issue in many of these cases. Although, as the lawyer defendants contend, Sprengel may not be able to establish the existence of an implied attorney-client relationship because they represented the entity Purposeful Press, LLC, and not its individual members (Sprengel and Lanette Mohr), that is a second-prong issue under section 425.16. Whether the lawyer defendants met their initial burden to demonstrate the challenged causes of action arise from protected activity must proceed on the premise, as alleged by Sprengel, that the lawyer defendants violated a duty of loyalty they owed her as a 50 percent member of Purposeful Press by providing legal services in two lawsuits (referred to in the complaint as the Dissolution Case and the Copyright Case) that were primarily devoted to the best interests of Mohr. However, I do not agree those cases categorically refusing to apply section 425.16 to "garden variety malpractice actions" were properly decided.[2]

---

[2]     The developing consensus in this area is neither unanimous nor uniform. Some appellate decisions have recognized a client's malpractice claims against his or her former lawyer for breach of fiduciary duty in the litigation context may satisfy the first prong of the anti-SLAPP analysis. (See, e.g., *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1166-1168 [alleged breach of duty of confidentiality and other fiduciary duties in context of judicial proceeding to marshal assets of insolvent insurer]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671-672 [alleged conflict of interest while representing client in action filed by Securities and Exchange Commission].)

3

First, although the Legislature's underlying purpose in enacting section 425.16 may have been to curtail lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition (see § 425.16, subd. (a)), the Supreme Court years ago rejected the argument a defendant filing a special motion to strike under this section must establish, in addition to demonstrating the gravamen or principal thrust of the complaint concerned protected activity, that it was filed with the intent to chill the exercise of constitutional speech or petition rights (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at pp. 58-67) or that the action had the effect of chilling those rights (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)  That a malpractice action is not brought primarily to chill the exercise of protected rights, as the *PrediWave* court observed (*PrediWave, supra*, 179 Cal.App.4th at p. 1227), or that the threat of a malpractice action "encourages the attorney to petition competently and zealously,"

---

In others the litigation activity itself unquestionably was incidental or collateral to the principal thrust or gravamen of the plaintiff's allegations of wrongdoing.  For example, in *Coretronic Corp. v. Cozen O'Connor, supra*, 192 Cal.App.4th 1381 the plaintiffs alleged that the defendant law firm had obtained confidential information while representing them in a lawsuit without disclosing the firm also represented, in a separate action, the company that was suing them and that the law firm then improperly shared that sensitive information with the company.  The court explained, "[I]t is not [the law firm's] advocacy that is the target of the complaint," but rather the fact of the law firm's dual representation that was the basis for the plaintiffs' claims of concealment and fraud. (*Id.* at p. 1392.)  Similarly, in *Hylton v. Frank E. Rogozienski, Inc*. (2009) 177 Cal.App.4th 1264 the former client alleged he had been charged an unconscionable fee that his lawyer had justified by falsely advising him there was doubt about his entitlement to certain stock and encouraging him to include the issue of stock ownership in his wrongful termination lawsuit and then to settle that claim.  (*Id.* at p. 1271.)  The Court of Appeal affirmed the trial court's ruling the lawyer had not met his threshold showing under section 425.16:  "Hylton's claims allude to Rogozienski's petitioning activity, but the gravamen of the claim rests on the alleged violation of Rogozienski's fiduciary obligations to Hylton by giving Hylton false advice to induce him to pay an excessive fee to Rogozienski." (*Id.* at p. 1274.)

In addition, transactional malpractice claims—those involving legal advice unrelated to litigation—generally will not trigger the protections of section 425.16.  (See, e.g., *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, supra,* 133 Cal.App.4th at p. 670; *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 195-197.)

4

rather than "chilling the petitioning activity," as the court in *Kolar v. Donahue, McIntosh & Hammerton, supra,* 145 Cal.App.4th at page 1540 posited, is simply irrelevant to the question whether a plaintiff's malpractice lawsuit arises from litigation-related activities—acts in furtherance of the right to petition or free speech as required by the first prong of section 425.16.

A closely related second flaw in these cases—perhaps fueled by an understandable distaste for the explosion of section 425.16 motions with their related prejudgment appeals (see, e.g., *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1184-1185)—is their violation of the plain language principle of statutory interpretation that has been "scrupulously honored" in the Supreme Court's anti-SLAPP jurisprudence. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)[3] In *Jarrow* the Supreme Court held malicious prosecution actions necessarily satisfy the first step of the section 425.16 analysis because they arise from an underlying lawsuit, or petition to the judicial branch. (*Jarrow*, at pp. 734-735.) The Court rejected the policy based argument that there was no evidence the Legislature had intended the section to apply to such claims: "'The plain language of the statute establishes what was intended by the Legislature.' [Citation.] '"If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to [extrinsic] indicia of the intent of the Legislature . . . ."' [Citation.] The anti-SLAPP statute is not ambiguous with respect to whether its protection of 'any act' furthering protected rights encompasses suing for malicious prosecution. As we previously have observed, '[n]othing in the statute itself categorically excludes any particular type of action from its operation.'" (*Jarrow*, at p. 735.)

That same reasoning applies to the so-called garden variety malpractice actions that follow *PrediWave* and have concluded, explicitly or implicitly, section 425.16 does

---

[3]    The cases also disregard the express statutory command that the provisions of section 425.16 "shall be construed broadly." (§ 425.16, subd. (a); see *Jarrow Formulas, Inc. v. LaMarche, supra,* 31 Cal.4th at p. 735.)

not apply because it would be "unreasonable" to interpret the statutory language to include a client's causes of action against the client's own attorney arising from litigation-related activities undertaken for that client. (*PrediWave, supra*, 179 Cal.App.4th at p. 1227.) The language is clear and unambiguous; no interpretation is necessary or appropriate. Whatever the label for the former client's causes of action—professional negligence, breach of fiduciary duty or breach of contract—if those claims are based on the lawyer's actions in litigation (or in anticipation of litigation), they arise from acts in furtherance of the right of petition. There is no more justification for a categorical exclusion of legal malpractice actions from the scope of section 425.16 than for excluding malicious prosecution cases.

There may well be valid reasons for reevaluating section 425.16 and limiting its scope in light of its current application and impact in the trial and appellate courts. But it is not our role to make that determination. Rather, it is for the Legislature, which has previously demonstrated its willingness to act to correct perceived abuses in California's anti-SLAPP law (see §§ 425.17, 425.18),[4] to balance competing public policies and to create an exception to the statutory scheme for legal malpractice cases if it concludes it is appropriate to do so. (See generally *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 136 ["We express no view about whether the statutory language, thus applied, ideally balances the competing concerns or represents the soundest public policy. Such is not our responsibility or our province. We simply conclude, as a matter of statutory

---

[4] Section 425.17, exempting certain actions from the anti-SLAPP statute, was enacted in 2003 (Stats. 2003, ch. 338, § 1, pp. 2722-2723), prior to the decision in *Benasra v. Mitchell Silberberg & Knupp LLP* (2004) 123 Cal.App.4th 1179; section 425.18, revising procedures applicable to so-called SLAPPback actions, was adopted in 2005 (Stats. 2005, ch. 535, § 2, pp. 4122-4123), shortly after *Benasra* but well before *PrediWave, supra*, 179 Cal.App.4th 1204, and the cases adopting its reasoning to exclude "garden variety malpractice actions" from the reach of section 425.16. The amendments to section 425.16 itself during the past decade have largely been technical and nonsubstantive.

6

construction, that application of the statutes' plain terms to the circumstances of this case does not produce absurd results that are clearly contrary to the Legislature's intent."].)

Accordingly, I respectfully dissent.


PERLUSS, P. J.

7