Filed 8/22/22  Urick v. Greenspoon Marder CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DANA URICK et al.,<br><br>　　　Plaintiffs and Respondents,<br><br>　　　v.<br><br>GREENSPOON MARDER LLP et al.,<br><br>　　　Defendants and Appellants. | B313277<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV49933) |

　　　APPEAL from an order of the Superior Court of Los Angeles, Maureen Duffy-Lewis, Judge.  Affirmed.

　　　Greenspoon Marder, John H. Pelzer and Germain D. Labat for Defendants and Appellants.

　　　Ulwelling Law, James K. Ulwelling and Lauren E. Saint for Plaintiffs and Respondents.

_____

　　　Former trustee Dana Urick brought an action individually and as guardian ad litem for her son Trentyn M. Urick-Stasa

against her former attorneys, James H. Turken and the law firm Greenspoon Marder LLP (collectively Greenspoon).[1]  The complaint contained causes of action for professional negligence, breach of contract, and interference with prospective economic advantage based on allegations that the legal services provided by Greenspoon to Dana as trustee resulted in her removal as trustee and the potential disinheritance of Dana and Trentyn as beneficiaries.  Greenspoon filed a special motion to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP statute), which the trial court denied.[2]

On appeal from the order denying the anti-SLAPP motion, Greenspoon contends the claims are based on speech and litigation activities taken on behalf of the trustee, which are protected by the anti-SLAPP statute because the attorneys owed no duty to Dana as an individual or to the beneficiaries of the trust.  We conclude the wrongful conduct alleged in the complaint is the breach of duties owed to Dana as a client, which resulted in damages to her personally, and the breach of duties owed to Dana and Trentyn as third-party beneficiaries, by providing legal advice and services below the standard of care.  A breach of professional duties arising from an attorney-client relationship is not protected conduct under the anti-SLAPP statute, even when

---

[1] Because multiple parties share the last name Urick, they will be referred to by their first names for ease of reference.

[2] SLAPP is an acronym for "Strategic Lawsuits Against Public Participation."  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.)  All further statutory references are to the Code of Civil Procedure unless otherwise stated.

it is related to speech and petitioning activity. Because the alleged conduct is not protected, we do not reach the second step of the anti-SLAPP analysis to determine whether the claims have minimal merit, including whether Greenspoon owed duties to Dana or Trentyn under the circumstances of this case. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### Summary of Background Facts[3]

Allyne L. Urick created the Allyne L. Urick Trust in 2013, which she fully restated in 2014. (*Urick 1*, *supra*, 15 Cal.App.5th at pp.1186–1187.) The trust provided upon Allyne's death for annuity payments over a specified period of time to her son Willis E. Urick III, her daughter Dana, and her grandson Trentyn. The remainder was to be distributed to Phillips Academy Andover. The trust's primary asset was an apartment building held in a joint venture with Lucien Seifert. When Allyne passed away in 2015, Dana was appointed as the successor trustee.

Dana engaged a law firm which filed a petition on February 16, 2016, to reform the trust. The attorney caption and the attorney signature block did not specify whether the attorneys represented Dana individually, in her capacity as trustee, or

---

[3] On its own motion, the court takes judicial notice of the record and the published opinion in *Urick v. Urick* (2017) 15 Cal.App.5th 1182 (*Urick 1*), as well as the unpublished opinions in *Urick v. Boykin* (March 23, 2020, B295773), *Urick v. Elkins Kalt Weintraub Reuben Gartside, LLP* (November 18, 2021, B310056), and *Urick v. Lewitt* (May 23, 2022, B312238).

both.  The body of the petition stated the petitioner was "Dana Urick, Trustee of The Allyne L. Urick Trust."  Dana signed a verification of the petition which did not state whether she was signing the verification individually, as trustee, or both.  The proposed reformation eliminated Willis's interest in the trust and substantially reduced the likelihood that Phillips Academy would receive any assets from the trust.  Although the proposed reformation benefited Trentyn, he did not expressly file or join in the petition.

In May 2016, Willis filed a petition for instructions as to whether the reformation petition violated the no contest clause of the trust, as well as a petition to remove and surcharge Dana as trustee (collectively the trust proceedings).  In response to the no contest petition, Dana, as trustee, filed an anti-SLAPP motion, which the trial court granted.  Willis filed an appeal.

In October 2017, this appellate court reversed the order denying the anti-SLAPP motion in the trust proceedings.  (*Urick 1*, *supra*, 15 Cal.App.5th p. 1186.)  We concluded the no contest petition was based on protected litigation activity, but Willis had demonstrated the minimal merit necessary to proceed if the trier of fact credited his evidence.  Although Dana provided conflicting evidence from which the trier of fact could find that she filed the reformation petition in her capacity as a trustee, that the petition was based on allegations of mistake, and that Dana had a reasonable basis to believe the petition would be reformed as proposed, Dana's evidence did not conclusively establish these facts as a matter of law, and therefore, the anti-SLAPP motion had to be denied.  (*Urick 1*, *supra*, 15 Cal.App.5th at pp. 1196–1198.)

4

Dana, as trustee, initiated procedures to buy out Seifert's interest in the apartment building, but the purchase was not completed. In November 2017, attorney Mark Boykin, who had drafted Allyne's estate plan, filed a lawsuit on behalf of Seifert against Dana as trustee. Dana engaged a second law firm to file a cross-complaint on her behalf as trustee against Seifert (collectively the Seifert litigation).

In November or December 2017, Dana, as trustee, retained a third law firm, Elkins Kalt Weintraub Reuben Gartside, LLP, to provide guidance and legal representation in matters related to trust administration and litigation concerning the trust, including the trust proceedings and the Seifert litigation.

In May 2018, the second law firm filed an amended petition for reformation on behalf of Dana, and a second amended petition for reformation was filed in July 2018.

In October 2018, Dana retained Greenspoon to represent her in her capacity as trustee and provide guidance about fulfilling her fiduciary duties. She clarified in an email that Greenspoon was representing her as trustee only, because she had not been sued individually in the Seifert litigation. Although she had been sued individually in the trust proceedings, she had individual counsel for those matters already. She agreed that Greenspoon should be associated in on all matters. She did not anticipate significant work in the trust proceedings until the following year, however, and preferred to wait until Greenspoon had an estate attorney in house.

In February 2019, Elkins Kalt terminated its association as co-counsel for Dana, as trustee, in the Seifert litigation, leaving Greenspoon as counsel for the trustee. In May 2019, attorney Lawrence Lebowsky was appointed guardian ad litem for

Trentyn in the trust proceedings only. That same month, Dana, as trustee, substituted Greenspoon for Elkins Kalt in the trust proceedings.

Dana withdrew her second amended petition for reformation in July 2019, on the first day of trial. On January 23, 2020, the probate court granted Willis's request in the trust proceedings to suspend Dana as trustee. The court appointed interim successor trustees from ConservaTrust Fiduciary Services, Inc. Dana was ordered, individually and as the former trustee, to provide all necessary information to the interim successor trustees. Greenspoon had appeared for Dana in her capacity as trustee, another set of attorneys appeared for Dana in her individual capacity, and Lebowsky appeared as guardian ad litem for Trentyn.

## Allegations of the Complaint

On December 31, 2020, Dana filed a complaint on behalf of herself individually and as guardian ad litem for Trentyn against Greenspoon for professional negligence, breach of contract, and interference with prospective economic advantage.

The preliminary facts of the complaint alleged that Dana, in her capacity as trustee, met with and retained Greenspoon in October 2018 to provide legal services. An attorney-client relationship was entered into that was partly oral, partly implied, and partly in writing. Greenspoon provided legal services to Dana as trustee, or negligently failed to do so, with respect to the trust proceedings. Greenspoon knew Dana and Trentyn were beneficiaries of the trust. Greenspoon agreed to competently provide legal services to Dana as trustee with respect to her

6

involvement in the trust proceedings. The parties intended that Greenspoon would competently advise Dana of her fiduciary obligations as trustee and that Greenspoon's representation would benefit the beneficiaries of the trust, including Dana and Trentyn.

## A. Dana's Professional Negligence Count

In the first count for professional negligence, Dana alleged Greenspoon failed to exercise the degree of skill necessary and fell below the standard of care for attorneys in the community based on the following conduct: (1) Greenspoon failed to advise Dana of the risks of continuing to pursue a petition for reformation of the trust to her interests as trustee and to her and Trentyn's interests as beneficiaries; (2) Greenspoon failed to advise Dana that her communications with Greenspoon would be disclosed to a successor trustee if Dana were suspended or removed, causing disclosure of information that she would not have disclosed if she had been so advised; (3) Greenspoon failed to advise Dana of her fiduciary duties as trustee, and acted on her behalf, including pursuing a petition for reformation, in a manner that may be held to have violated her fiduciary duties and disinherit her; (4) Greenspoon's conduct with respect to the Seifert litigation resulted in a less lucrative settlement than if Greenspoon acted competently, leading other trust beneficiaries to seek a surcharge against Dana; (5) Greenspoon charged fees for legal work that may not have benefitted the trust, leading to a potential surcharge against Dana; and (6) Greenspoon pursued litigation that led to the probate court's order suspending and removing Dana as trustee.

7

As counsel for Dana as trustee, Greenspoon owed her a duty of care, both as trustee and individually, that required Greenspoon to exercise the knowledge, skill, and ability ordinarily exercised by similarly situated lawyers. They negligently acted, and failed to act, as set forth above. It was foreseeable that failing to exercise ordinary care while discharging their legal services would cause Dana and Trentyn to suffer harm. Furthermore, Greenspoon was aware that their competent performance in providing legal services to Dana would benefit all of the beneficiaries. Their competent services were the motivation for Dana as trustee to enter into the agreement for Greenspoon to provide legal services to her while she was fulfilling her obligations as trustee.

Dana anticipates she will incur attorney fees and other damages as a result of Greenspoon's actions. Dana's damages include her suspension and removal as trustee, costing her hundreds of thousands of dollars per year in lost trustee fees. In addition, her damages include her potential disinheritance if the reformation petition is found to have triggered the no contest clause of the trust, and surcharge for fees paid to Greenspoon by the trust as well as other beneficiaries' attorney fees and costs to respond to Greenspoon's filings on behalf of Dana as trustee. The amount of damages that Dana has suffered as a result of Greenspoon's actions and inactions is believed to be in excess of $7.5 million.

## B. Trentyn's Professional Negligence Count

The second count of the complaint alleged professional negligence against Greenspoon on behalf of Trentyn. Greenspoon

8

and Dana, as trustee, intended Greenspoon's representation to benefit the beneficiaries. Greenspoon owed a duty to protect Trentyn's interests as a beneficiary, but failed to exercise the degree of skill necessary and fell below the standard of care for attorneys in the community.

Trentyn was a third-party beneficiary of Greenspoon's contract with Dana as trustee. As a result, Greenspoon owed Trentyn a duty of care that required Greenspoon to exercise the knowledge, skill, and ability ordinarily exercised by other similarly situated lawyers. Greenspoon negligently acted, and failed to act, breaching their duty of care to Trentyn. Specifically, Greenspoon's pursuit of the reformation petition on behalf of Dana as trustee is the basis of a pending petition to disinherit Trentyn.

Greenspoon was aware that their competent performance, by providing legal services to Dana as trustee, would benefit the beneficiaries, motivating Dana to enter into the retainer agreement. As a result of Greenspoon's negligence, Trentyn has suffered and will further suffer significant damages. The amount of damages that Trentyn has suffered as a result of Greenspoon's actions and inactions is believed to be in excess of $7.5 million.

## C. Dana and Trentyn's Breach of Contract Count

Dana and Trentyn brought a count for breach of contract alleging Dana entered into a contract with Greenspoon in October 2018, which is partly in writing and partly oral, for Greenspoon to act as her counsel with regard to various issues related to the trust. If not express, then it was implied that Greenspoon would act in the best interests of the beneficiaries of

9

the trust. As a result, Dana and Trentyn are third-party beneficiaries of any contract Dana entered into, individually or as trustee, with Greenspoon. Greenspoon breached the contract by negligently pursuing the trust proceedings that are the subject of petitions to disinherit Dana and Trentyn. The amount of damages that Dana and Trentyn suffered as a result of Greenspoon's breach of the contract was also in excess of $7.5 million.

### D. Dana and Trentyn's Count for Interference with Prospective Economic Advantage

Dana and Trentyn also alleged a count for interference with prospective economic advantage. Greenspoon was aware Dana and Trentyn were beneficiaries and would benefit financially from trust distributions for years. They knew Dana was trustee, and Trentyn would have an opportunity to act as trustee in the future. Greenspoon was aware their failure to competently represent Dana as trustee could cause economic harm to Dana and Trentyn. Dana individually and Trentyn were third-party beneficiaries of Dana's contract as trustee for legal services. Greenspoon was retained by Dana as trustee to advise her on fulfilling her fiduciary duties so she could continue serving as trustee and not face surcharge liability.

Due to Greenspoon's negligence and breach of contract, Dana has been suspended as trustee and faces petitions to be removed as trustee, to surcharge her, and to disinherit her and Trentyn. Dana's removal as trustee will cause her to lose the right to appoint Trentyn as successor trustee. Greenspoon's actions resulted in Dana and Trentyn losing the financial

10

benefits which would have flowed to them as trustees and may result in the lost of their financial benefits as beneficiaries. The same monetary damages were alleged as in previous counts.

In addition, the complaint sought a determination of the reasonable value of Greenspoon's services and return of all payments in excess of the reasonable value of those services, costs and attorney fees as permitted.

## Anti-SLAPP Motion and Supporting Evidence

On March 24, 2021, Greenspoon filed a special motion to strike the complaint. Greenspoon argued that Dana engaged their firm in her capacity as trustee; the complaint did not allege that Dana or Trentyn engaged the firm for individual representation. All of the alleged wrongful conduct arose from legal advice to Dana as trustee and from actions taken in the trust proceedings, which was protected petitioning activity within the meaning of the anti-SLAPP statute. In addition, the litigation privilege barred the claims, and Greenspoon could not meaningfully defend itself without breaching the attorney-client privilege now held by the successor trustee.

In support of the anti-SLAPP motion, Greenspoon filed the declaration of attorney Jayesh Patel. Patel stated that Greenspoon represented Dana in her capacity as trustee in connection with the Seifert litigation (*Lucien Seifert v. Dana Urick, Successor Trustee, Urick Family Distribution Trust*, LASC Case No. LC106538, consolidated with *Dana Urick v. Lucien Seifert*, LASC Case No. BC687263), the related case *The Allyne L. Urick Trust v. Mark Boykin*, LASC Case No. BC696459, and the

11

trust proceedings (*In re Allyne L. Urick Trust*, LASC Case No. BP171001).

Dana is a licensed, practicing California attorney. As trustee, she confirmed the limited scope of Greenspoon's representation in her email to the firm. Greenspoon had represented Dana in her capacity as trustee only, not in her individual capacity, and as litigation counsel only. Greenspoon appeared at hearings, attended depositions, and filed papers in the state cases. At hearings and depositions Dana appeared individually through separate counsel or did not attend the hearing in her individual capacity at all.

Furthermore, Greenspoon did not appear on behalf of Trentyn in any capacity. At all times while Greenspoon provided services to Dana as trustee, Trentyn had separate counsel and a court-appointed guardian ad litem other than Dana to represent his interests.

## Opposition to Anti-SLAPP Motion and Supporting Evidence

In April 2021, Dana and Trentyn filed their opposition to the anti-SLAPP motion. They argued that actions based on professional negligence were not subject to the anti-SLAPP statute, even when the alleged negligence arose in the context of petitioning activity. Whether Greenspoon owed professional duties to Dana and Trentyn was an issue related to the merits of the claim that was not relevant to the first prong of the anti-SLAPP statute. Similarly, in the event Dana is surcharged for Greenspoon's negligent conduct, her claim is similar to an indemnity action that is not based on protected activity.

Dana and Trentyn further argued that even if the anti-SLAPP statute applied, they could establish a prima facie case that Greenspoon owed duties to Dana and Trentyn individually. In addition, Greenspoon owed duties to them as third-party beneficiaries of the retainer agreement. Their allegations of negligent interference with prospective advantage was based on the same duties. Moreover, basic maxims of jurisprudence required that Greenspoon be held accountable. The litigation privilege does not apply to legal malpractice actions, they argued, and the successor trustee had not prevented Greenspoon from presenting a defense by asserting the attorney-client privilege.

In support of the opposition, Dana submitted her declaration as to the following facts. In October 2018, Greenspoon began providing legal representation to her as trustee in matters related to administration of the trust and trust litigation. She retained the firm to provide guidance on how to fulfill her fiduciary duties as trustee for the benefit of the beneficiaries. Attorney Turken conducted himself in a manner that voluntarily extended Greenspoon's professional duties to her personally and to Trentyn. Turken provided options about the implications of his advice and strategies to her as trustee on her and Trentyn's interests as beneficiaries, although many of these opinions proved to be erroneous. Turken's actions have been cited by Willis and Philips Academy as further grounds to disinherit Dana and Trentyn as beneficiaries.

Dana retained Greenspoon to advise her about her potential personal liability as trustee, on which they did advise her, but failed to do adequately. She had a reasonable belief that if Greenspoon's advice and actions could negatively impact the beneficiaries' interests or her personal interests in continuing to

serve as trustee, they would advise her and take actions to mitigate these risks, which they did not.

Greenspoon's breach of duties to Dana and Trentyn, in Dana's capacity as trustee and in their individual capacities, caused damages in the form of attorney fees opposing petitions in probate court that seek to surcharge her personally for the attorney fees paid by the trust and costs incurred by Willis and Philips Academy, to remove her, and to disinherit Dana and Trentyn based partly on actions taken by, and on the advice of, Greenspoon.

Specifically, Greenspoon pursued the Seifert litigation on Dana's behalf as trustee. In January 2020, the probate court ruled the Seifert litigation breached Dana's fiduciary duties as trustee for which she is now potentially personally liable for surcharge.

Greenspoon prepared and filed an accounting on Dana's behalf as trustee. Willis and Philips Academy had challenged the accounting, asserting that payments made on behalf of Trentyn for his education and as compensation for Dana's services as trustee breached her duties as trustee. Greenspoon was aware of the payments but never informed Dana that the payments could be improper in her capacity as trustee.

Greenspoon also pursued reformation of the trust on her behalf as trustee which they abandoned on the day of trial. Fees paid to Greenspoon in connection with the reformation proceedings are now the subject of a surcharge petition. In January 2020, the probate court ruled the amended petition for reformation which Greenspoon pursued on behalf of Dana as trustee, likely constituted a conflict of interest and was the basis for her suspension as trustee.

14

The attorneys never informed Dana that her communications could be discoverable by a successor trustee, which resulted in disclosure of sensitive information that she would not have provided in a discoverable manner had she been appropriately advised. They also failed to adequately advise her of the nature and scope of her fiduciary duties as trustee generally, and with regard to specific actions they took on her behalf as trustee. They failed to strategize, assess, or recommend alternatives to pursuing the Seifert litigation and the reformation petition. Attorney Turken advised her to refuse to answer deposition questions concerning communications with prior counsel by asserting the attorney-client privilege, potentially eliminating her ability to assert the defense of good faith reliance on the advice of counsel in the proceedings to surcharge and disinherit her.

In addition, Dana and Trentyn provided copies of several pleadings and orders from litigation related to the trust. They submitted Willis's petition seeking to remove Dana as trustee, surcharge her for breach of trust, obtain reimbursement of attorney fees and costs paid by the trust, and compel an accounting. Willis sought to surcharge Dana for attorney fees expended by the trust for unnecessary litigation that resulted in undue expense to the trust while she was trustee. Dana and Trentyn also filed a copy of Willis's objections to Greenspoon's petition for payment of attorney fees and costs. Among other arguments, Willis argued that Greenspoon's representation was ineffective and of no benefit to the trust.

## Reply and Trial Court Ruling

Greenspoon filed a reply arguing Dana and Trentyn conceded that the attorneys were hired exclusively as counsel for the trustee, and as a result, Greenspoon owed no duty to the beneficiaries, including the former trustee, because it would be a conflict of interest. Dana and Trentyn had separate counsel representing their individual interests, and the litigation matters in which Greenspoon represented the trustee were filed by other lawyers prior to Greenspoon's engagement. Dana and Trentyn had not pled causation or injury, because their damages were speculative. Lastly, the current trustee had not waived the attorney-client privilege to allow Greenspoon to refute the claims.

A hearing on the anti-SLAPP motion was held on April 22, 2021. The court took the matter under submission, and issued an order later that day denying the anti-SLAPP motion on the ground that Greenspoon had not shown the causes of action arose from protected activities. Greenspoon filed a timely notice of appeal from the order.

## DISCUSSION

## Standard of Review and Statutory Scheme

The Legislature enacted the anti-SLAPP statute to protect defendants from meritless lawsuits brought primarily to discourage the defendants from exercising their constitutional rights to speak and petition on matters of public significance. (§ 425.16, subd. (a); *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1008–1009 (*Bonni*).) To accomplish this purpose, the

16

statute authorizes a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"'Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.]'" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster*).) In this first step, the court determines the conduct that the challenged claim arises from and whether that conduct is protected activity under the statute. (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 698.) The court considers what conduct of the defendant satisfies the elements of the claim that form the basis for liability. (*Bonni, supra*, 11 Cal.5th at p. 1009.) "The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity. [Citation.]" (*Ibid*; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 ["At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them"].)

"'If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a

17

legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.  It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.  [Citation.]  "[C]laims with the requisite minimal merit may proceed.'"  [Citation.]  The grant or denial of an anti-SLAPP motion is reviewed de novo.  [Citation.]" (*Monster, supra,* 7 Cal.5th at p. 788.)

In making its determination, the court considers the pleadings and the evidence submitted in connection with the proceeding to provide the facts supporting the liability or defense. (§ 425.16, subd. (b)(2).)

## Relationship Between the Parties

Greenspoon contends that all of the claims in the complaint arise from speech and petitioning activities taken on behalf of Dana as trustee.  The conduct is protected under the anti-SLAPP statute, they argue, because they did not owe a duty to Dana or Trentyn as individuals.  This contention, however, improperly conflates the first step of the anti-SLAPP analysis as to whether a claim is based on protected activity with the second step considering the merits of the claim.  Because the wrongful conduct alleged in the complaint is not protected under the anti-SLAPP statute, we do not reach the second step of the analysis.

The anti-SLAPP statute may protect speech and petitioning activities taken on behalf of another party (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116; *Pech v. Doniger* (2022) 75 Cal.App.5th 443, 462), but this protection does not extend to clients' claims based on their own

18

attorneys' speech and petitioning activities on behalf of the clients (*PrediWave Corp. v. Simpson Thatcher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1227–1228 (*PrediWave*)).  Clients' claims based on their attorneys' speech and petitioning activities are generally not brought to deter their attorneys from speech and petitioning conduct on their behalf, but rather to object to the quality of the attorneys' performance.  (*PrediWave, supra,* 179 Cal.App.4th at pp. 1227–1228.)

"[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.  [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)  Allegations of protected activity that are incidental and merely provide context rather than an element of the claim cannot be stricken under the anti-SLAPP statute.  (*Bonni, supra,* 11 Cal.5th at p. 1012.)

When specific acts of alleged wrongdoing by an attorney do not involve protected activity, whether the claim is labeled professional negligence, breach of contract, or breach of fiduciary duty, the anti-SLAPP statute does not apply.  For example, an attorney's representation of a client which constitutes a conflict of interest as to another client is not protected activity under the anti-SLAPP statute.  (*PrediWave, supra,* 179 Cal.App.4th at pp. 1226–1227 [defendant attorneys simultaneously represented two clients with an irreconcilable conflict of interest]; *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 732–733 [defendant attorneys violated fiduciary duties by representing a new client with interests adverse to former client].)  Dispensing false legal advice to induce payment of attorney fees is not protected activity.  (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1274.)  Failing to comply with statutory and

court-ordered obligations to serve discovery responses is not protected activity under the anti-SLAPP statute. (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 631–632.)

In *PrediWave*, the court summarized several anti-SLAPP cases against former attorneys and concluded: "In determining the applicability of the anti-SLAPP statute, we think a distinction must be drawn between (1) clients' causes of action against attorneys based upon the attorneys' acts on behalf of those clients, (2) clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients, and (3) non-clients' causes of action against attorneys. In the first class, the alleged speech and petitioning activity was carried out by attorneys on behalf of the plaintiffs in the lawsuits now being attacked as SLAPP's, although the attorneys may have allegedly acted incompetently or in violation of Professional Rules of Conduct. The causes of action in this first class categorically are not being brought 'primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition . . . .' (§ 425.16, subd. (a).)" (*PrediWave, supra,* 179 Cal.App.4th at p. 1227.)

Although the *PrediWave* formulation is generally useful, it does not apply neatly in all cases. (See, i.e., *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 314–315 [attorney's conduct was not "'solely'" on behalf of different clients, because former client's interests were implicated].) Not every cause of action by a nonclient related to an attorney's speech and petitioning activity is subject to the anti-SLAPP statute. (See *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 703–704 [claim by attorney against other attorneys for equitable indemnity was not distinguishable from client's claim against attorney for malpractice].) In certain

20

circumstances, courts have found an attorney liable to a nonclient for professional negligence based on the attorney's legal services. (See *Chang v. Lederman* (2009) 172 Cal.App.4th 67, 76–84 [estate planning attorneys have a duty of care to expressly named beneficiaries in a will or trust to exercise ordinary skill and care to properly effectuate the bequests in the testamentary document].)

On appeal, Greenspoon's sole basis for concluding that the conduct alleged in the complaint is subject to the anti-SLAPP statute is their assertion that the attorneys did not represent Dana and Trentyn in their individual capacities. For the purposes of this appeal, Greenspoon implicitly concedes the conduct alleged in the complaint is not subject to the anti-SLAPP statute if the attorneys in fact had duties to Dana or Trentyn as alleged in the complaint. However, Greenspoon's argument improperly mixes the first and second prongs of the anti-SLAPP analysis. (See *Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 155–157 (*Sprengel*) ["arguments regarding the absence of an attorney-client relationship with Sprengel improperly conflate the first and second prongs of the Section 425.16 test"].)

"'The sole inquiry' under the first prong of the test is whether the plaintiff's claims arise from protected speech or petitioning activity. [Citation.] In making this determination, '[w]e do not consider the veracity of [the plaintiff's] allegations' [citation] nor do we consider '[m]erits based arguments.' (*Freeman*[ *v. Schack* (2007) 154 Cal.App.4th 719,] 733 [(*Freeman*)] ['[m]erits based arguments have no place in our threshold analysis of whether plaintiffs' causes of action arise from protected activity']; see *Coretronic*[ *Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381,] 1388 ['[a]rguments about the

21

merits of the claims are irrelevant to the first step of the anti-SLAPP analysis']).  If the defendant demonstrates the plaintiff's claims do arise from protected activity, we then review the potential merits of the plaintiff's claims in the second step of the analysis.  (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 ["'If the court finds [the defendant has satisfied the first prong], it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim'"].)  However, '[w]here [defendant] cannot meet his threshold showing, the fact he "might be able to otherwise prevail on the merits under the 'probability' step is irrelevant.'" (*Freeman, supra,* 154 Cal.App.4th at p. 733.)"  (*Sprengel, supra*, 241 Cal.App.4th at pp.156–157.)

Whether Greenspoon actually shared an attorney-client relationship with Dana which allows her to recover damages that she suffered personally as a result of Greenspoon's legal advice and services to her as trustee, and whether Greenspoon actually had duties to Dana and Trentyn as third-party beneficiaries of Greenspoon's legal services to the trustee, relates to the merits of the claims and is therefore not relevant to the first step of the anti-SLAPP analysis.  Greenspoon may eventually prevail by proving the absence of any duty to Dana or Trentyn, but that does not affect the substance of their claims that Greenspoon's conduct breached duties to them, which is not protected activity. The anti-SLAPP motion was properly denied.

## DISPOSITION

The order denying the anti-SLAPP motion is affirmed. Respondents Dana Urick and Trentyn M. Urick-Stasa are awarded their costs on appeal.

MOOR, J.

We concur:

BAKER, Acting P. J.

KIM, J.