Filed 1/26/23  Kelly v. Kelly CA1/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THOMAS P. KELLY III,<br><br>        Cross-complainant and<br>        Respondent,<br><br>v.<br><br>JOHN A. KELLY,<br><br>        Cross-defendant and<br>        Appellant. | A164293<br><br>(Sonoma County<br>Super. Ct. No. SCV-267688) |

John A. Kelly (John) appeals from an order denying his special motion to strike Thomas P. Kelly III's (Thomas) cross-complaint pursuant to Code of Civil Procedure[1] section 425.16 (the anti-SLAPP[2] statute).  John contends the trial court erred in ruling that the anti-SLAPP statute did not apply to Thomas's cross-claims for breach of fiduciary duty and fraud.  We conclude John met his burden to show that Thomas's cross-claim for fraud arose, in part, from protected litigation activity and Thomas did not meet his burden

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1 (*Baral*).)

to show a probability of prevailing as to that cross-claim.  Accordingly, we will affirm in part and reverse in part the trial court's order.

## I.  BACKGROUND

As John notes in his opening brief, this is a family trust dispute involving a family filled with lawyers.[3]  We discuss only those facts relevant to the issues on appeal.

### A.  *The Family Trust and Underlying Malpractice Action*

John and Thomas's father, Thomas P. Kelly, Jr. (decedent), was a lawyer in Santa Rosa.  In 1999, decedent established his revocable trust, the Thomas P. Kelly, Jr. Trust—1999 (Trust).  His wife, Joyce, is the sole beneficiary of the Trust during her lifetime, and the couple's three children, Thomas, John, and Heather, each of whom are lawyers, are the remainder beneficiaries of the Trust.

Decedent died on February 24, 2020.  Upon his death, decedent's brother, William B. Kelly (William), became trustee of decedent's Trust.  When he died, decedent held a legal malpractice insurance policy through Lawyers' Mutual Insurance Company (Lawyers' Mutual) with a $1.5 million aggregate policy limit.

About a month *before* decedent died, Thomas contacted Lawyers' Mutual by e-mail to inform the company of a potential malpractice claim against decedent by three of his former clients.[4]  Thomas forwarded his e-

---

[3] For this reason, we refer to most individuals involved by their first name.  We intend no disrespect.

[4] The parties disagree as to Thomas's status during the period February to July 2020.  John contends Thomas was acting as attorney to William in his role as trustee of the Trust during that time.  In his declaration in support of his opposition to the anti-SLAPP motion, Thomas stated that he "never accepted any fees for work as an attorney from the

2

mail to Hugh Rice Kelly (Hugh) and James Tynan Kelly (James), both also brothers of decedent, who are lawyers in Texas.[5] Lawyers' Mutual responded by letter to confirm receipt of the information about the potential malpractice claim.[6]

About a month *after* decedent died, Thomas informed Lawyers' Mutual by letter and e-mail that his father had died. His e-mail requested "the closing of [decedent's] account and related malpractice policy." Thomas copied William, Hugh, and James on the e-mail. The next day, Hugh sent a response stating: "Tom, could this have any effect on malpractice claims brought against the estate? Obviously malpractice coverage needs to remain in place until limitations runs against potential malpractice plaintiffs. [¶] I feel sure you have this covered, but because the issue is so important I would like to double check. [¶] I also assume you have your own malpractice coverage." Later the same day, James e-mailed Thomas, Hugh, and William to "second Hugh's comment," advising that Thomas retain "malpractice insurance in place pending [William's] qualification as executor & or trustee," and suggesting he "send an email countermanding this email."

Thomas responded via e-mail to Hugh and copied William and James. In his e-mail, Thomas wrote: "Claims-made policy. All known claims were submitted in writing in January and acknowledged. [¶] Unknown claims are covered as policy was in force at the time of the insured event. Full policy attached, but pages out of order." James replied to Thomas's e-mail and

---

Trust," and "no retainer agreement [was] executed . . . ." At oral argument in the trial court, Thomas asserted he was only "attempting to help" William.

[5] Hugh was the successor trustee to William under the terms of the Trust.

[6] The former clients did not bring a malpractice claim.

copied William and Hugh. James expressed concern about the insurance coverage and requested Thomas's "fully reasoned legal memorandum & supporting case & statutory law in support." Alternatively, he "strongly recommend[ed]" that Thomas rescind his notice of cancellation, let William pay the premium, and let William and his lawyers "sort the matter out." Thomas responded: "He will need to contact them and tell them. Section 6.7 allows policy accrual to successor."

On March 30, 2020, a representative of Lawyers' Mutual responded to Thomas's letter by e-mail. The e-mail stated Lawyers' Mutual was "processing cancellation of his E&O coverage, effective 2/24/2020" and attached an "Extended Reporting Period Endorsement (a.k.a., tail) quote . . . for [his] review and use." The e-mail gave instructions for steps to follow to purchase tail coverage. Thomas forwarded the e-mail to William, Hugh, and James, and wrote: "[T]he malpractice carrier offered tail coverage outlined below. [¶] This should address your concerns about the policy. I have not responded as [William] should handle this directly." Thomas sent a second e-mail stating: "[T]he policy apparently terminates upon the death of the insured with tail coverage available per the prior e-mail." James responded: "Ok. That is good to know."

In May 2020, William commenced proceedings in probate court in Sonoma County to probate decedent's will and appoint William as personal representative. William was represented in the probate matter by Joseph Piasta.

About two months later, in July 2020, Piasta wrote to Thomas's counsel[7] that he had received notice of a potential malpractice claim against decedent by a former client, Oak Grove Construction Co., Inc. (Oak Grove).

---

[7] Thomas was represented by Edward Bernard at the time.

4

Piasta attached a letter from Oak Grove's attorney outlining allegations of professional negligence against decedent related to his representation of Oak Grove in a lawsuit in Marin County. Thomas sent a copy of the e-mail and attached letter regarding Oak Grove's claim to Lawyers' Mutual, receipt of which the insurance company acknowledged. The next month, John replaced Piasta as counsel for William.

In late November 2020, counsel for Oak Grove filed creditors' claims by Oak Grove and its owner in an amount "estimated to exceed one million dollars" in decedent's probate matter. The next month, Thomas sent an e-mail to Lawyers' Mutual requesting an update as to the current status of the potential claim by Oak Grove. Lawyers' Mutual did not respond.

A short while later, John, as counsel for William, sent a letter to Attorney Wayne Littlefield, counsel for Lawyers' Mutual. In the letter, John told Littlefield to direct any inquiries about the Oak Grove claim to him. He also wrote: "I recommend that if [Thomas] contacts you further, you direct him to me."

In January 2021, Oak Grove, filed a complaint against William, as trustee of the Trust, and Joyce, Thomas, John, and Heather, as beneficiaries, alleging causes of action for legal malpractice, breach of contract, and breach of fiduciary duty for alleged legal malpractice by decedent. A couple of weeks later, Thomas called Littlefield concerning Oak Grove's claim. In their phone conversation, Littlefield told Thomas that tail coverage had not been purchased for decedent's malpractice policy and the Oak Grove claim was denied by Lawyers' Mutual as a result. Thomas sent a follow-up e-mail to Littlefield, requesting that Littlefield send the "correspondence denying the claim so I can see what happened." He further stated: "It appears that

5

[William] elected not to purchase the tail coverage hence the denial of the claim." Littlefield did not respond to the e-mail.

The following month, Thomas spoke by phone with Oak Grove's counsel, Nathaniel Lipanovich. During this conversation, Lipanovich revealed that John had sent him correspondence from Littlefield, counsel for Lawyers' Mutual, denying coverage for Oak Grove's claim. When Thomas asked Lipanovich to send him a copy of the coverage denial letter, Lipanovich refused, saying that John sent him the letter "on the explicit condition . . . that it not be disclosed to [Thomas]." Thomas followed up with an e-mail repeating his request for a copy of the coverage denial letter. Thomas wrote to Lipanovich that John and William were "deliberately withholding that letter from [him]" and noted "[t]he document is not subject to any privilege." Thomas further wrote: "I understand you had some form of agreement with [John] not to release it, but given that you have initiated a lawsuit in this matter, I do not see how that is enforceable under these conditions." On March 16, 2021, Thomas received a copy of the coverage denial letter from Lawyers' Mutual in response to his discovery request in the Oak Grove matter.

## B. *The Cross-complaint and Anti-SLAPP Motion*

On March 22, 2021, Thomas filed the verified cross-complaint at issue in this appeal, asserting causes of action for breach of fiduciary duty and fraud against William and John.[8] Thomas alleged that William, as trustee of the Trust, had a fiduciary duty to administer the Trust with care, and that John, as counsel for William, had an affirmative fiduciary duty to keep the beneficiaries of the Trust reasonably informed of the Trust and its

---

[8] In June 2021, the parties settled the Oak Grove litigation and dismissed the action with prejudice.

6

administration pursuant to Probate Code section 16060. Thomas alleged that William breached his fiduciary duty by failing to secure tail coverage for the Trust against potential malpractice claims, subjecting the Trust to Oak Grove's claim, and John breached his fiduciary duty by failing to inform Thomas of the status of the Oak Grove claim. The cross-complaint further alleged that John actively concealed the status of the Oak Grove claim by instructing Lawyers' Mutual, through Littlefield, not to discuss the matter with Thomas and by instructing Lipanovich not to release the insurance denial letter from Lawyer's Mutual.

The fraud cross-claim was based on similar allegations, but additionally alleged that John (and William) never informed Thomas about and sought to conceal from him the failure to secure malpractice coverage through the tail quote. Thomas further specifically alleged that John (and William) "actively concealed, and intended to conceal, their breach of fiduciary duty by falsely claiming in the March 18, 2021 email" that (1) Thomas cancelled the malpractice insurance policy, (2) Thomas declined tail coverage, (3) they (John and William) had previously requested malpractice insurance information from Thomas, and (4) they (John and William) had previously alleged a malpractice claim against Thomas.

The March 18, 2021 e-mail is attached as an exhibit to the cross-complaint. The e-mail is from John to Thomas; Lipanovich is copied. In the e-mail, John requested that Thomas stop communicating with William, who was represented by John's firm, and noted that decedent's estate was not a party to the Oak Grove action. John then wrote: "The mix-up in your correspondence is consistent with your past practice of mishandling matters relating to our late father's affairs, particularly your cancelling his malpractice insurance policy and declining tail coverage under the same. It

7

is the trustee's position that you are liable to the trust for your act of malpractice, and we request again you provide us with your malpractice insurance information so that we may submit a claim and have counsel begin a defense of this action."

Below this message is a "Forwarded message" that Thomas sent to William, Hugh, and James the day before. In that e-mail, which bears the subject line, "SCV-267688 Oak Grove vs Kelly—correspondence," Thomas said he was writing "in regard to the pending litigation against the trust bearing case name Oak Grove Construction Company Inc. vs. Kelly" and a Sonoma County probate case. Thomas stated that John "is barred from representing the estate in this case" and asserted that "[t]here is an unavoidable conflict of interest given [John's] role as co-defendant and beneficiary." Thomas urged William, Hugh, and James "to seek competent counsel to represent the estate and prevent a default [in the Oak Grove malpractice matter] immediately."

John filed a special motion to strike the cross-complaint pursuant to section 425.16 (the anti-SLAPP motion). John asserted that Thomas's cross-claims against him all arose from his representation of William in connection with the Oak Grove malpractice claim, as all of his alleged statements were "clearly made in anticipation of or in connection with this litigation, and concerned issues in the litigation, and were directed to persons having some interest in the litigation, and are therefore protected under section 425.16." John also argued Thomas could not demonstrate a probability of prevailing on his claims because the undisputed evidence showed his statements were true, Thomas did not rely on them, John did not actively participate in the failure to procure malpractice coverage or personally benefit from his representation of William, the cross-claims were barred by the litigation

8

privilege, and Thomas did not suffer any damages because the Oak Grove litigation had settled and their mother, Joyce, paid the settlement out of her own funds so the Trust was not harmed.

Thomas opposed the motion, arguing that John could not demonstrate the cross-claims arose out of protected activity because they arose solely from the conduct of John and William in attempting to conceal the status of the Oak Grove case from Thomas and fabricate a malpractice claim against him and were independent of the claims in the Oak Grove case. Thomas also argued he had demonstrated his cross-claims had "at least minimal merit."

The trial court denied the anti-SLAPP motion, concluding John failed to meet his burden to show Thomas's causes of action arose from protected activity. The court rejected John's argument that his alleged conduct was protected as litigation activity in connection with his representation of William in the Oak Grove matter. The court explained: "Although [Thomas's] causes of action are based in part on communications, and more specifically false communications or concealment, these are only tangentially related to the malpractice litigation. They are alleged communications or non-communications to Trust beneficiaries under the duty to inform trust beneficiaries about a trust. They only related to issues or events in litigation and as a basis for Thomas's cross-complaint, they are not statements made in, or related to, litigation or litigation activity. In this cross-complaint, Thomas complains of this conduct solely as breach of trustee duties to beneficiaries. Similarly, the failure to ensure adequate malpractice-insurance coverage is not even speech activity and has no relation to the

malpractice litigation aside from exposing the trust to liability for that litigation."[9]

John timely appealed the trial court's order denying his anti-SLAPP motion.[10]

## II. DISCUSSION

John contends the trial court erred by denying his special motion to strike the cross-complaint under the anti-SLAPP statute.

### A. *The Anti-SLAPP Motion*

#### 1. *Governing Law*

The anti-SLAPP statute authorizes a special motion to strike meritless claims early in the litigation if the claims "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1); *Monster Energy Co. v. Schecter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*).) " 'Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to

---

[9] The trial court noted that Thomas alleged sufficient facts to set forth a prima facie case for each cause of action in his cross-complaint, but submitted no actual evidence with his opposition papers. Because it found John had failed to meet his burden to show the claims arose from protected activity, the trial court deemed that failure "unimportant here," but noted that if it had found the claims arose from protected activity, Thomas "would then have the burden of providing evidence supporting the probability of success."

[10] John also purports to appeal from the trial court's denial of attorney fees in connection with his motion to vacate entry of default pursuant to section 473, subdivisions (b) and (c). We address briefly below why that issue is not appealable.

10

demonstrate the merit of the claim by establishing a probability of success.' " (*Monster Energy*, at p. 788.)  If the plaintiff makes a showing of " ' "minimal merit," ' " the claim may proceed.  (*Ibid*.)

We review de novo the grant or denial of an anti-SLAPP motion. (*Monster Energy*, *supra*, 7 Cal.5th at p. 788.)

### 2.  Protected Activity (First Prong)

John first asserts the trial court erred in ruling that Thomas's cross-claims do not arise from protected activity under the first prong of the anti-SLAPP inquiry.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*).)  "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'  [Citation.] . . . [T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' "  (*Id.* at p. 1063.)  In the first step of the anti-SLAPP analysis, "courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'  [Citation.]  The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity."  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)  "We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.' "  (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 491.)

11

At times, a challenged cause of action may arise from both protected and unprotected activity, i.e., a " 'mixed cause of action.' " (*Baral, supra,* 1 Cal.5th at p. 381.) "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded [at the first step of the anti-SLAPP analysis]. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Id.* at p. 396.)

Here, Thomas alleges that John violated his fiduciary duty to Thomas as a beneficiary of the Trust under Probate Code section 16060 by failing to inform him about and actively concealing the status of the Oak Grove malpractice claim and William's failure to secure tail coverage. His fraud claim is based on those same allegations as well as on allegations that John made false representations about alleged malpractice *by Thomas* in the March 18, 2021 e-mail.

The elements of a breach of fiduciary duty claim are (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach. (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086.) The elements of a fraud claim are (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1185–1186.)

According to the allegations of the cross-complaint, the following acts by Thomas formed the basis of both his fraud and breach of fiduciary duty cross-claims: (1) John's failure to inform Thomas about the status of the Oak Grove malpractice claim, (2) John's failure to tell Thomas that William failed

12

to secure tail coverage, (3) John's instruction to Littlefield not to discuss the Oak Grove malpractice claim with Thomas, and (4) John's instruction to Lipanovich not to share the coverage denial letter from Lawyers' Mutual with Thomas.  Thomas's fraud cross-claim also asserts that John made four knowingly false statements in his March 18, 2021 e-mail to Thomas, with intent to conceal his breach of fiduciary duty:  (1) that Thomas canceled decedent's malpractice policy; (2) that Thomas declined tail coverage; (3) that John and William previously requested malpractice insurance information from Thomas; and (4) that John and William previously alleged a malpractice claim against Thomas.

A cross-defendant meets his or her burden of showing the activity underlying cross-complainant's claim was itself an act of petitioning or free speech " 'by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)  John contends all of Thomas's cross-claims arise from protected activity under the plain language of section 425.16, subdivisions (e)(1) and (2).  Under section 425.16, subdivision (e)(1), protected activity includes " 'any written or oral statement or writing made before a . . . judicial proceeding,' " and under subdivision (e)(2), it includes " 'any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body.' "  John asserts that because all of his alleged conduct consisted of oral and written statements and other " 'communicative acts' " resulting from his representation of William in connection with anticipated or pending litigation, the trial court should have concluded he met the first prong of the anti-SLAPP analysis.

13

We disagree. First, as to the conduct underlying *both* the breach of fiduciary duty and fraud cross-claims—specifically, John's failure to inform Thomas about the denial of the Oak Grove malpractice claim and absence of tail coverage and John's instructions to Littlefield and Lipanovich not to share information with Thomas regarding the denial of the Oak Grove malpractice claim by Lawyers' Mutual—we agree with the trial court those claims do not arise from protected activity because they are only tangentially related to the malpractice litigation.[11] Although the anti-SLAPP statute provides broad protection for litigation-related activities, "it does not follow that any claims associated with those activities are subject to the anti-SLAPP statute." (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537; *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264,

---

[11] Nor do we agree with John that his alleged conduct arose from the underlying probate matters. First, as Thomas correctly notes, John has forfeited this argument by failing to raise it in the trial court. (*Fedunikak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1381.) In any event, even if he had not forfeited the argument, John has not shown his alleged concealment of information about the Oak Grove malpractice claim arose from the probate matters, which according to John's own briefing and evidence concerned only the probate of decedent's will, appointment of William as a personal representative, and a *Heggstad* petition to have his assets transferred from decedent's estate to the Trust. (See *Estate of Heggstad* (1993) 16 Cal.App.4th 943.) Indeed, in the December 2020 letter to Littlefield, John wrote: "I am [William's] . . . . attorney as the named executor for [decedent's estate], although there are no estate proceedings underway aside for the already-granted *Heggstad* petition." Likewise, the fact that Oak Grove filed a creditor's claim in one of the probate matters in November 2020 does not change the analysis. The claim, which entirely concerned decedent's alleged malpractice, at most potentially subjected the Trust assets to a judgment in the Oak Grove matter, but is collateral to the issue of whether John is liable for breach of fiduciary duty to Thomas as a beneficiary of the Trust for failing to disclose information about the denial of the malpractice claim and lack of tail coverage.

14

1275 [client's action against his or her attorney, whether it is pleaded as a claim for malpractice, breach of fiduciary duty, or any other theory of recovery is not subject to the anti-SLAPP statute just because some allegations refer to attorney's action representing client]; *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037 ["Not all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16."].)

Here, the activity underlying the cross-claims was John's effort to conceal the denial of the malpractice claim and absence of tail coverage from Thomas in breach of an alleged fiduciary duty to Thomas as a beneficiary of the Trust, not John's acts as an attorney in representing his client, William, in connection with the Oak Grove action. (See, e.g., *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 314 [attorney's acts of representing clients with interests adverse to his former client and using confidential information in new representation arose from alleged breach of fiduciary duties and professional obligations, not litigation conduct, which was merely incidental to unprotected conduct]; *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 879–880 [although alleged breach of fiduciary duty may have been carried out by protected activity of filing probate petitions, those litigation activities only provided evidence of alleged breach of fiduciary duty but did not form basis of trust beneficiaries' claim]; *Park*, *supra*, 2 Cal.5th at p. 1068 [comments made in protected communications supplied evidence of discriminatory animus but statements themselves were not basis for liability]; *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1284–1285 [letters, e-mail, and filing of unlawful detainer actions constituted *evidence* of alleged disability discrimination but were not the acts on which complaint was based].)

15

"[A] claim is not subject to a motion to strike simply because it . . . was . . . communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park*, *supra*, 2 Cal.5th at p. 1060.) The statements by John in his letter to Littlefield and phone calls with Lipanovich and Littlefield, while conveyed orally and in writing by John as attorney for William, were not themselves the basis of Thomas's cross-claims. Rather, the statements provide *evidence* of John's alleged concealment in derogation of a statutory duty to keep beneficiaries informed about the Trust. Likewise, the failure to disclose information about denial of the malpractice claim and failure to obtain tail coverage, although occurring during John's representation of William, concern his alleged breach of duty to Thomas as a beneficiary, not John's actions in representing William, or the substantive issues in either the Oak Grove litigation or the probate matters. Because these claims arose out of an alleged breach of fiduciary duty only incidentally connected with litigation activity, the trial court properly denied the anti-SLAPP motion as to those allegations.[12]

---

[12] We find John's reliance on *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953; *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793; *Cabral v. Martins* (2009) 177 Cal.App.4th 471; *Contreras v. Dowling* (2016) 5 Cal.App.5th 394; and *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200 unavailing. In each of those cases, unlike here, communicative conduct by attorneys in anticipation of or during litigation was the alleged injury-producing conduct that formed the basis of the claim. (*Seltzer*, at p. 963 [settlement negotiations]; *Bergstein*, at p. 811 [alleged tortious activity centered in defendant's role as counsel including devising and implementing legal strategy, instituting litigation, and drafting and exchanging pleadings]; *Cabral*, at p. 479 [allegations arose from attorney revisions to estate plan, attempt to implement estate plan through probate proceedings, and defense of respondents in litigation]; *Contreras*, at p. 411

John further contends the trial court erred because he did not owe a duty of disclosure to Thomas under Probate Code section 16060, as that duty applies only to the trustee, not the trustee's attorney. John's argument, however, pertains to the merits of Thomas's claim, an issue we do not consider at the first stage of the anti-SLAPP analysis.[13] (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1388 ["Arguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis."]; *Sprengel v. Zbylut* (2015) 241 Cal.App.4th 140, 156 [arguments regarding absence of attorney-client relationship improperly conflated first and second prongs of anti-SLAPP test; " 'sole inquiry' under the first prong of the test is whether the plaintiff's claims arise from protected speech or petitioning activity"].)

Nor have we concluded that the alleged activity is unprotected merely because Thomas alleged it was unlawful. "[A]t the first step of the anti-SLAPP analysis, we routinely . . . examine[] the conduct of defendants without relying on whatever improper motive the plaintiff alleged." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 888 [only question at first stage is whether defendant has made out a prima facie case that activity

---

[attorney's acts consisted of advice to clients and writing a letter to opposing counsel]; *Finton,* at p. 210 [retention of computer hard drive obtained from client in litigation].)

[13] In any event, as the trial court expressly noted in its ruling, a trust beneficiary may bring a proceeding against a third party (including an attorney) who actively participates in or knowingly benefits from a trustee's breach of trust. (See, e.g., *Cortese v. Sherwood* (2018) 26 Cal.App.5th 445, 455 ["California law recognizes an attorney can be liable for participating in a trustee's breach of fiduciary duty to a beneficiary"]; *Pierce v. Lyman* (1991) 1 Cal.App.4th 1093, 1102–1106 [beneficiary may bring cause of action against attorney for trustee for active participation in trustee's breach of fiduciary duty].)

17

underlying plaintiff's claims is statutorily protected, not whether its acts were ultimately lawful]; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 [nothing in the anti-SLAPP statute categorically excludes any particular type of action from its operation].) Here, denial of the anti-SLAPP motion was proper not because Thomas alleged John's conduct was fraudulent or illegal, but because the alleged conduct was not in furtherance of John's free speech or petitioning rights.

We find a different analysis applies, however, with respect to the allegations of fraud regarding the March 18, 2021 e-mail.[14] Written statements made by an attorney in connection with an issue under consideration by a judicial body is petitioning activity protected by the anti-SLAPP statute. (§ 425.16, subd. (e)(2).) "An attorney's communication with opposing counsel on behalf of a client regarding pending litigation directly implicates the right to petition and thus is subject to a special motion to strike." (*GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 908.)

We conclude John met his burden to show the alleged fraudulent statements in his March 18, 2021 e-mail were protected activity within the meaning of section 425.16, subdivision (e)(2). The March 18 e-mail was John's response to a communication from Thomas about John's representation of William in the pending Oak Grove litigation. The e-mail was a direct response to Thomas's accusations that John had a conflict of interest in the Oak Grove litigation and was sent by John as counsel for William as trustee. Moreover, the alleged false representations regarding Thomas's alleged malpractice and request for his malpractice insurance

_____

[14] We observe the trial court did not discuss the March 18, 2021 e-mail in its order denying the anti-SLAPP motion.

18

carrier information were made in connection with John's statement in the same e-mail that they were seeking to obtain a defense in the Oak Grove litigation.

In the trial court and on appeal, Thomas contends the March 18 e-mail cannot be protected activity, because discovery responses provided by William demonstrate John's activity was unauthorized by his client. Thomas served a special interrogatory on William seeking "all facts supporting YOUR claim against [Thomas] for legal malpractice as stated by JOHN KELLY in that e-mail of March 18, 2021 which is attached to the CROSS-COMPLAINT and marked as Exhibit DD." After objecting that the special interrogatory called for a legal conclusion, expert opinion, attorney-client privileged information, work product, and that the phrase " 'claim' " is vague and ambiguous, William responded to the interrogatory by stating in relevant part: "I did not authorize John Kelly to threaten legal malpractice against Thomas P. Kelly, III, but believe any such contention would be based on the following . . . ." The response goes on to describe Thomas's role in advising William and helping him manage the "wind-up" of decedent's law practice. Thomas contends this discovery response shows that John never had authorization from William to assert a malpractice claim against Thomas, and argues under *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062 (*Rusheen*), that John's unauthorized statement in the March 18, 2021 e-mail cannot be protected activity.

Thomas's argument is unavailing. In *Rusheen*, our Supreme Court held that the trial court properly granted an anti-SLAPP motion on an abuse of process claim arising from the plaintiff-attorney's execution of a default judgment procured through the filing of allegedly false declarations of service. (*Rusheen*, *supra*, 37 Cal.4th at p. 1065.) The gravamen of the action

19

in *Rusheen* was the procurement of the judgment based on the allegedly perjured declarations of service, and because the declarations were communications " '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action,' " they were subject to the litigation privilege, precluding the cross-claim for abuse of process. (*Id.* at p. 1062.)

It appears Thomas relies on *Rusheen* to argue the e-mail cannot be protected conduct because it was "unauthorized." It is not clear what William meant in his discovery response by his statement that he did not "authorize John Kelly to *threaten malpractice*" (italics added), but he does not deny John Kelly was representing him as trustee of the Trust in writing the March 18, 2021 e-mail, nor does the discovery response indicate the content of the e-mail was unauthorized. Based on our review of the pleadings and the evidence, the March 18 e-mail was a written communication from John as attorney for William made during the course of litigation related to obtaining a defense of the pending Oak Grove litigation, and thus falls within protected activity under section 425.16, subdivision (e)(2).

We likewise reject Thomas's argument that John's activity is not protected because it was fraudulent. As noted above, we generally disregard the alleged motives of the cross-defendant at the first step of the anti-SLAPP analysis. (*Wilson v. Cable News Network, Inc.*, *supra*, 7 Cal.5th at p. 888.) Moreover, in making this argument, Thomas relies on cases that did not involve the anti-SLAPP statute. Finally, while it is true that a special motion to strike cannot be used by a defendant whose allegedly protected activity was illegal, the illegality exception applies only if the defendant's activity is "illegal as a matter of law," because either the defendant concedes the point

20

or the evidence provided "conclusively establishes" illegality. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320.) That is not the case here.

This communication constituted protected activity, and accordingly, the burden shifted to Thomas to demonstrate a probability of prevailing on his fraud claim based on the March 18, 2021 e-mail.

### 3. *Probability of Prevailing (Second Prong)*

The trial court ruled that Thomas's cross-complaint did not arise from constitutionally protected speech or petitioning activity, and accordingly, did not reach the second step of the anti-SLAPP analysis. Because our review of the issue is de novo and the parties have fully briefed the issue, however, we will address whether Thomas has shown a probability of prevailing in the interest of judicial economy. (See, e.g., *Santa Clara Waste Water Co. v. County of Ventura Environmental Health Division* (2017) 17 Cal.App.5th 1082, 1091.)

When deciding whether the plaintiff has met the second-step burden on an anti-SLAPP motion, we proceed as we do on a summary judgment motion. (*Baral*, *supra*, 1 Cal.5th at p. 384.) We consider the pleadings and determine whether the cross-complainant's evidence, accepted as true, and the inferences reasonably drawn from that evidence are sufficient to sustain a judgment in favor of the cross-complainant. (*Id.* at pp. 384–385.) We consider the cross-defendant's evidence only to determine whether it defeats the challenged claim as a matter of law. (*Id.* at p. 385.)

John advances multiple arguments that Thomas's cross-claim for fraud lacks minimal merit, but because we find one of them dispositive, we need not address the others. As noted above, Thomas's cross-complaint alleges damages based on John's (and William's) actions subjecting the assets of the Trust to the Oak Grove claim. However, it is undisputed that the Oak Grove

21

litigation has been dismissed with prejudice after the parties settled and that no portion of the settlement was paid "directly or indirectly" from the Trust. Accordingly, Thomas cannot show that he suffered any harm as a result of the alleged failure to inform him about the status of the Oak Grove litigation or the failure to obtain tail coverage. In his respondent's brief, Thomas does not assert he sustained any damages, nor has he presented any admissible evidence that he did so. Accordingly, his cross-claim for fraud based on the March 18, 2021 e-mail fails.

In sum, to the extent Thomas's cross-claims are based on conduct other than the March 18, 2021 e-mail, the claims do not arise from activity protected by the anti-SLAPP statute and are not subject to being stricken under the statute regardless of his probability of prevailing on the claims. But to the extent the fraud cross-claim is based on the representations made in the March 18 e-mail, it does arise from protected activity. Because Thomas has failed to show a probability of prevailing on that claim, it must be stricken from the cross-complaint.[15]

## B. *Amended Request for Judicial Notice and Second Motion to Augment Record*

John filed an amended request for judicial notice asking us to notice the register of actions in each of the probate matters initiated by William, Thomas's verified petition to remove William as trustee of the Trust and for an accounting, and William's petition for approval of adjustment between principal and income. We deny the amended request for judicial notice as the documents were not before the trial court in ruling on the motion and are not

---

[15] The allegations that must be stricken from the cross-complaint are the following: the entirety of paragraphs 69–74, the last sentence of paragraph 78, and the entirety of paragraphs 112–115. Exhibit DD (the March 18, 2021 e-mail) must also be stricken.

necessary to our resolution of this appeal. (See, e.g., *Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21, 29, fn. 2 [denying request for judicial notice of additional documents not necessary to resolution of appeal]; *People v. Preslie* (1977) 70 Cal.App.3d 486, 493 (*Preslie*) [generally, court should not take judicial notice of matter that has not been considered by trial court in first instance].)

John also filed a second motion[16] to augment the record one day after he filed the reply brief in this matter. We deny the request because it is untimely. (Ct. App., First Dist., Local Rules, rule 4(c), Augmentations of the Record ["Any motion filed in this court to augment a record shall be submitted on the earliest date practicable. Appellants should file any such request in one motion filed no later than 30 days after the record has been filed in this court . . . . Thereafter, motions to augment will be considered only upon a showing of good cause."]; *Preslie*, *supra*, 70 Cal.App.3d at p. 492 ["requests for augmentation made after a reasonable time has expired from receiving the record on appeal . . . will be denied absent a strong showing of unusual or unavoidable circumstances giving rise to the delay"].) In any event, the material John seeks to add to the record relates to the trial court's denial of attorney fees on his motion to vacate default, which for reasons we discuss below, we do not consider.

## C. *Attorney Fees on Motion to Vacate Default*

John also purports to appeal from the trial court's July 15, 2021 order granting his motion to vacate a default but denying his request for attorney fees and sanctions. John contends the trial court erred in denying attorney fees and sanctions because the undisputed facts show Thomas violated his

---

[16] We granted the first motion to augment the record filed with the opening brief.

23

ethical duties in seeking to have the default entered while John had informed Thomas he was out of state attending their uncle's funeral. John asserts the order is appealable as "a collateral order unconnected to the outcome of the anti-SLAPP appeal or the judgment that will be entered later based on the outcome of this case," and his request for attorney fees and sanctions is " 'too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' "

We need not address whether the trial court erred in denying fees because we conclude the order is not appealable. The existence of an appealable order is a prerequisite to appellate jurisdiction. (*Olson v. Cory* (1983) 35 Cal.3d 390, 398.)

" 'To qualify as appealable under the collateral order doctrine, the interlocutory order must (1) be a final determination (2) of a collateral matter (3) and direct the payment of money or performance of an act.' " (*Sanchez v. Westlake Services, LLC* (2022) 73 Cal.App.5th 1100, 1107–1108 [collecting cases]; see *Dr. V Productions, Inc. v. Rey* (2021) 68 Cal.App.5th 793, 797 ["[t]he modern formulation" of the collateral order doctrine "makes no mention of an order *denying* the payment of money or *refusing* to require performance of an act"]; *Sese v. Wells Fargo Bank, N.A.* (2016) 2 Cal.App.5th 710, 716 [order denying interim attorney fees was not appealable as collateral order].)[17] The trial court's order denying John's request for attorney fees and

---

[17] John cites *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, as supporting the appealability of an order denying sanctions but that case represents a minority view. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ¶¶ 2:79–2:80.) Moreover, in *Muller,* unlike here, the appellate court concluded that the order denying sanctions for alleged misconduct during a second trial likely would not be reviewable after the appellate court

sanctions does not direct payment of money or performance of an act and, accordingly, is not separately appealable.

## III. DISPOSITION

The order denying the anti-SLAPP motion is reversed and the matter is remanded to the trial court with directions to enter a new order granting the motion in part, by striking the portions of the cross-complaint alleging fraud based on the March 18, 2021 e-mail (see fn. 15, *ante*), and otherwise denying the motion. The parties shall bear their own costs on appeal.


MARGULIES, J.


WE CONCUR:


HUMES, P. J.


BANKE, J.

---

remanded for a third trial. (*Muller*, at pp. 904–905.) Because no such considerations pertain here, we find *Muller* distinguishable.